[Crim. No. 79. Fourth Appellate District.—April 4, 1933.]

THE PEOPLE, Respondent, v. LAWSON LINDE, Appellant.

Jess G. Sutliff, Fred W. Heath and Glenn E. Tinder for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and Harvey W. Guthrie, District Attorney, for Respondent.

JENNINGS, J.—This is an appeal by the defendant from a judgment convicting him of the crime of burglary of the second degree. The following facts are pertinent to the appeal: On July 18, 1932, at some time between 7 and 8 o'clock P. M., a garage building owned by the Sierra Talc Company in the town of Keeler, Inyo County, was entered and a number of tires and tubes, together with a small sum of money, were taken from the premises. One Steve Gago was arrested at San Fernando, California, three days after the burglary was committed and most of the stolen property with the exception of the money was found in his possession. He was charged with the crime of burglary, plead guilty, and was sentenced by the court.

After Gago's arrest and after he had confessed his guilt he implicated the defendant, Lawson Linde, as a participant in the burglary. An information was thereupon filed charging Linde with the crime of burglary. He was arraigned, plead not guilty, was tried before a jury and convicted. Judgment was rendered. A motion for a new trial was made by the defendant and denied. This appeal is from

the judgment and from the order denying defendant's motion for a new trial.

During the trial of defendant Steve Gago testified as a witness for the prosecution. He admitted that he had committed the burglary and testified that appellant had assisted in its commission. It is therefore not open to question and it is conceded by respondent that, as to appellant, the witness Gago was an accomplice as this phrase is defined in section 1111 of the Penal Code.

Appellant's principal contention on this appeal is that the testimony of the admitted accomplice was not corroborated by such other evidence as tended to connect him with the commission of the offense as required by section 1111 of the Penal Code. Respondent, on the other hand, contends that sufficient corroborative evidence to fulfill the requirements of the above-mentioned statute was placed before the jury.

The evidence which, it is maintained, furnished sufficient corroboration of the testimony of the accomplice consists of the following: First, the admitted fact that appellant visited the home of the accomplice between the hours of 5:30 and 6 o'clock P. M. of the evening of July 18, 1932; second, the testimony of the defense witness, Morris Horn, that he was at a swimming pool in Keeler during the evening of July 18, 1932, and that appellant and accomplice appeared at the pool about 6:30 P. M. of the above-mentioned date and during a conversation that ensued between the three the statement was made by the accomplice that he "was going to knock over a place that evening and both of us (Lawson Linde) and myself both said we did not want anything to do with it"; third, the testimony of the witness Wilson Plummer to the following effect: "Well, it came up, Gago was about to lose his car and he hated to lose it, and he was out of a job and he would like to work but there was nothing to do and Linde made the statement, I took it to be in a joking way, he said 'one could probably get some tires out of the Talc' and that was all that was said"; fourth, the testimony of the accomplice that he gave appellant instructions to obtain his address from his brother, Claude Gago; fifth, the testimony of Claude Gago that on July 20, 1932, appellant asked him for Steve Gago's address;

sixth, the testimony of Claude Gago to the effect that on July 20, 1932, while the witness was at appellant's home, an automobile passed and appellant remarked, ''I wonder if that is the sheriff Hutchison looking for me.''

The contention of noncorroboration is a most common contention in cases where convictions have been obtained principally by reason of the testimony of accomplices. From this it has resulted that decisions are numerous wherein the evidence presented to the trial court has been examined for the purpose of discovering whether or not it measures up to the standard established by the statute requiring corroboration of the testimony of accomplices. From these decisions certain unquestioned principles with respect to the highly controversial subject of corroboration of accomplices have developed.

In the first place, it has become thoroughly settled that the corroborative evidence need not establish the precise facts testified to by the accomplice, that it need not be strongly corroborative, and that even though it be slight and entirely circumstantial it is sufficient if it can be said to connect the accused with the commission of the offense (*People* v. *Negra,* 208 Cal. 64 [280 Pac. 364]; *People* v. *Martin,* 19 Cal. App. 295 [125 Pac. 919]).

On the other hand, it is equally well established that the corroborative evidence is not sufficient if it does no more than show an opportunity for the commission of the offense or raise a suspicion, however strong, that the offense was committed by the accused (*People* v. *Robbins,* 171 Cal. 466 [154 Pac. 317]; *People* v. *Kempley,* 205 Cal. 441 [271 Pac. 278]; *People* v. *Davis,* 210 Cal. 540 [293 Pac. 32]). The evidence relied upon as corroborative of the testimony of an accomplice must, in the language of the statute, ''tend to connect the defendant with the commission of the offense''. The difficulty of properly solving the problem is enhanced by reason of the fact that a reviewing court must, in the final analysis, place itself in the position of the triers of fact and weigh the evidence for the purpose of discovering whether it complies with the requirements of the statute.

Bearing in mind the above-mentioned principles applicable to the question here presented, we approach a consideration of the evidence which, it is claimed, suffi-

ciently corroborated the testimony of the accomplice for the purpose of discovering whether in any part, or taken collectively, it may be said that it tended to connect appellant with the commission of the offense with which he was charged.

The evidence relied upon by respondent as being sufficiently corroborative of the accomplice's testimony may be summarized as follows: Appellant was at accomplice's home between 5:30 and 6 o'clock P. M. of the day on which the burglary was committed and at 6:30 P.,M. of the same day was present with the accomplice at the swimming pool in the town of Keeler, at which time and place the accomplice stated "he was going to knock over a place that evening". At some time in response to a suggestion by the accomplice that he was about to lose his car appellant remarked "One could probably get some tires out of the Talc." On the second day after the burglary was committed appellant asked the accomplice's brother to furnish him the address of the accomplice and on this same occasion appellant remarked, upon observing a passing automobile, "I wonder if that is the sheriff Hutchison looking for me."

It may be conceded that the evidence as to the presence of appellant at the home of the accomplice and shortly thereafter at the swimming pool directly corroborated the testimony of the accomplice to these two facts. However, unless we can say that being in the company of the individual who admitted that he committed the burglary at a time two hours prior to the time it was committed, tended to connect appellant with its commission, this evidence of itself has no corroborative value. It is obvious that, standing alone, it did not connect appellant with the commission of the crime.

It may also be conceded that the evidence respecting the statement attributed to appellant, viz., "One could probably get some tires out of the Talc," directly corroborated the testimony of the accomplice to this fact. Nevertheless, it is at least difficult to arrive at the conclusion that this isolated statement tended in any way to connect appellant with the commission of the offense. Furthermore, there is a time element important to be considered with reference to this statement. The accomplice testified positively that the appellant said something to him in the presence of the witness, Wilson Plummer, about burglarizing the garage and that the

statement was made about 4 or 4:30 o'clock of July 18, 1932. The accomplice did not testify what the statement was, but stated that it was repeated when he and appellant went home for supper and that the two of them talked it over and planned about going out later in the evening. The witness Plummer, however, testified that appellant remarked to the accomplice in his presence that "One could probably get some tires out of the Talc," but that the remark was made about a week prior to the date on which the burglary was committed. The statement loses much of whatever corroborative efficacy it possesses if made a week prior to the date of the burglary as testified by the witness Plummer.

The statement attributed to the accomplice to the effect that "he was going to knock over a place that evening", which the witness Morris Horn and appellant both testified was made at the swimming pool about 6:30 P. M. of July 18, 1932, can hardly be said to connect appellant with the commission of the burglary, particularly in view of the additional testimony of both of the above-mentioned witnesses that they then and there remarked that they did not want anything to do with the proposed burglary.

It is equally difficult to discover how it can be argued, with any hope of success, that the evidence that appellant asked the accomplice's brother for the address of accomplice on July 20, 1932, materially corroborated the testimony of the accomplice. It is true that the accomplice testified that he informed appellant that appellant could procure his address from accomplice's brother and the inquiry as to the address directed to the brother by appellant may well have been considered by the jury as a circumstance corroborating the accomplice's testimony to the effect above stated. But, conceding that it was corroborative to the extent suggested, it can hardly be maintained that it tended in any way to connect appellant with the commission of the offense. The evidence produced at the trial showed that appellant and accomplice were well acquainted and were often together and that appellant knew that the accomplice intended to go to Los Angeles on the evening of July 18, 1932. The inquiry regarding the address of the accomplice made on July 20, 1932, was, therefore, under the circumstances, a natural and possibly an innocent inquiry. Whatever corroborative

value it had was too slight to meet the requirements of the statute.

The statement attributed to appellant by the witness Claude Gago to the effect ''I wonder if that is the sheriff Hutchison looking for me'' is not directly corroborative of any particular part of the accomplice's testimony. It may, however, be argued that it is a circumstance corroborative of the highly material portion of the accomplice's testimony that appellant was present and assisted in the commission of the burglary and strongly indicative of a sense of guilt on the part of appellant. Nevertheless, bearing in mind the admission of appellant that he was in the company of the accomplice during the late afternoon and early evening of the day on which the burglary was committed, the statement takes on an entirely different aspect and displays a very natural concern on appellant's part that the sheriff might be looking for him for the purpose of interrogating him as to what he knew of the accomplice's movements on the night of the burglary.

We also entertain the opinion that the aforementioned evidence, taken collectively, does not afford the corroboration of the accomplice's testimony contemplated by the provisions of section 1111 of the Penal Code. The most that can be said of it is that it raises a suspicion that appellant may have been implicated in the commission of the burglary. This, however, as heretofore pointed out, is not enough. The evidence relied upon as corroborative of an accomplice's testimony must of itself tend to connect the accused with the commission of the offense.

Our conclusion that the testimony of the accomplice incriminating appellant was not sufficiently corroborated to justify appellant's conviction renders unnecessary a discussion of other points relied upon by him as additional reasons for reversal of the judgment. One such contention deserves consideration not so much because of its importance as a contention on behalf of appellant on this appeal as because there is bound up in it a question with respect to the admission of certain evidence which respondent contends was erroneously resolved in appellant's favor by the trial court.

During the trial of the action a certain letter written by the accomplice on the third day following the commission

of the burglary and addressed to appellant was offered in evidence by the prosecution. The evidence relating to the writing of the letter showed that it was composed by the accomplice in his home shortly prior to his arrest, that he attempted to procure an envelope in which to mail the letter to appellant, but was unable to do so, that after his arrest he handed the letter to his sister with the instruction that she should keep it, that the letter did not reach appellant.

Under these circumstances the court sustained appellant's objection to the admission of the letter and it was rejected. During the argument of the case before the jury the district attorney made certain remarks respecting the writing of this letter by the accomplice. These remarks were assigned as misconduct by appellant's counsel and it is contended that the alleged misconduct of the prosecution in this regard of itself warrants a reversal of the judgment. No useful purpose would be subserved by prolonged consideration of this contention under our view that a reversal is justified because of the lack of sufficient corroboration of the accomplice's testimony. Some consideration may, however, properly be given to respondent's contention that the trial court erred in refusing to admit the letter in evidence.

This contention is based upon the reasoning that the letter offered in evidence was admissible as the declaration of a co-conspirator under the familiar rule that the acts and declarations of one conspirator during the pendency of a conspiracy are competent evidence against his co-conspirator. The difficulty which arises in attempting to apply the rule to the proffered evidence is that in order to make such evidence admissible there must be proof of the existence of the conspiracy. Manifestly, the declaration of a co-conspirator may not be used to establish the fact of the existence of the conspiracy for the declaration or statement is pure hearsay unsanctified by the solemnity of an oath and incapable of being subjected to the test of cross-examination (*People* v. *Doble*, 203 Cal. 510 [265 Pac. 184]; *People* v. *Zimmerman*, 3 Cal. App. 84 [84 Pac. 446]). The obvious danger of permitting evidence of this character to be received is that the jury might accept it as proof of the existence of the conspiracy and then use the same evidence to establish a defendant's guilt (*People* v. *Irwin*, 77 Cal. 494 [20 Pac. 56]). If the record herein had shown that

aside from the proffered evidence and from the testimony of the accomplice there was evidence which tended to prove that a conspiracy to commit the crime had been entered into between appellant and the accomplice there would be greater force to respondent's contention. But, when the record is searched it is clear that the same difficulty is encountered as is presented by the endeavor to discover whether the testimony of the accomplice is sufficiently corroborated. Conceding that conspiracy is by reason of its very character difficult of proof and that the rule is well established that it may be shown by evidence entirely circumstantial and consisting of independent facts bearing more or less closely or remotely upon the essential fact of a common unlawful design, nevertheless such evidence must at least produce more than a suspicion that a conspiracy existed. When, therefore, the evidence independent of the accomplice's testimony is examined for the purpose of discovering whether it may fairly be said that it tended to show the existence of the claimed conspiracy it is apparent that the only evidence which in the slightest degree pointed to the formation and existence of a common unlawful design consists of the proof that appellant was in the company of the accomplice during the afternoon and evening of the day on which the burglary was committed and that two days after the commission of the offense appellant requested the accomplice's brother to furnish him with the accomplice's address. To hold that these slight circumstances furnished sufficient proof of the existence of a conspiracy to make the proffered evidence admissible is, we think, not justified and we therefore entertain the opinion that the court committed no error in rejecting the evidence. This conclusion has been reached without regard to the established rule that the declaration of one conspirator is admissible in evidence against his co-conspirator only when it appears that the conspiracy was pending and its object not consummated when the declaration was made and also that the declaration must be in aid or furtherance of the common purpose or design of the conspiracy.

Aside from the theory of respondent that the letter was admissible as the declaration of a co-conspirator it was clearly not admissible under any other theory (*People* v. *Colburn,* 105 Cal. 648 [38 Pac. 1105]; *People* v. *Lee Dick*

*Lung,* 129 Cal. 491 [62 Pac. 71] ; *Sorenson* v. *United States,* 168 Fed. 785).

For the reasons herein stated the judgment is reversed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 18, 1933, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1933.