200 P.2d 346

**STATE** v. SULLIVAN et al.

No. 986.

Supreme Court of Arizona.

Sept. 23, 1948.

Motion for Dismissal Denied Oct. 19, 1948.

Evo De Concini, Atty. Gen., J. E. Jacobson, Asst. Atty. Gen., Richard P. Meason, Asst. Atty. Gen., M. V. Gibbons, Apache County Atty., of St. Johns, and Max T. Layton, Graham County Atty. of Safford, for appellee.

H. Karl Mangum, of Flagstaff, and John F. Sullivan, and J. H. Morgan, both of Phoenix, for appellant John L. Sullivan.

James E. Flynn, of Phoenix, for appellant J. P. Christy.

THALHEIMER, Superior Judge.

The appellants, John L. Sullivan, at the time attorney general of Arizona, and J. P. Christy, together with Harry T. Hendricks, were charged with the crime of conspiracy by information containing three counts filed in the first instance in the Superior Court of Apache County, Arizona. This information on motion of the defendants was quashed and on order of the court the county attorney filed another information (designated amended information) also containing three counts charging defendants with conspiracy. A motion of the defendants to quash such second information was denied and subsequently a change of venue was granted defendants and the cause assigned to the Superior Court of Graham County.

Trial of the defendants on the second information was had in the Superior Court of Graham County and the jury being unable to agree on a verdict, a mistrial was ordered.

Thereafter, on motion of the county attorney, count 3 of the information was quashed and on leave granted by the court another information (designated second amended information) charging the defendants in three counts with conspiracy was filed. Defendants' motions to quash this information also were denied.

Trial was then had on the information last filed and resulted in the defendants being found guilty on counts 1 and 2 of such information and not guilty on count 3.

The defendants, John L. Sullivan and J. P. Christy, prosecute this appeal from the

judgment of conviction on counts 1 and 2 of the information and the orders of the trial court denying their motions in arrest of judgment and for a new trial. The defendant Harry T. Hendricks has not appealed.

The charges made together with the particulars thereof and the overt acts alleged in the two counts of the information on which the defendants were convicted were as follows:

In count 1 it was charged that on or about July 30, 1946, in consideration of the payment to them of the sum of $300 the defendants conspired together to pervert and obstruct justice and the due administration of the law of Arizona by conspiring to protect R. W. Cassady from criminal prosecution in the operation of a certain gaming device by the use of slot-machines at Chamese Lodge, adjacent to U. S. Highway 66, Apache County, Arizona, and the overt act alleged was that "said defendants did pursuant to and in furtherance of said conspiracy for the purpose aforesaid receive from the said R. W. Cassady on or about the 30th day of July, 1946, said sum of Three Hundred ($300.00) Dollars."

. In count 2 it was charged that on or about October 18, 1946, in consideration of the payment to them of the sum of $250 the defendants conspired together in a like manner and for a like purpose and the overt act alleged was that "said defendants did pursuant to and in further-ance of said conspiracy for the purpose aforesaid receive from the said R. W. Cassady on or about the 18th day of October, 1946, said sum of Two Hundred Fifty ($250.00) Dollars".

We have considered the numerous assignments of error raised by the appellants but for the purposes of this appeal deem it unnecessary to discuss any of such assignments other than the considerable number based on the ground that the evidence was insufficient to warrant the conviction of the defendants on counts 1 and 2 of the information and the judgment rendered by the lower court thereon.

The facts developed by the evidence relied on by the state were chronologically as follows:

In the spring of 1945, appellant John L. Sullivan, in his capacity as attorney general of Arizona, wrote to the county attorney of Pinal County as to gambling conditions in such county and later in the same year verbally stated to him: "The lid's off; everything is wide open so far as I am concerned". In the month of July, 1946, the appellant J. P. Christy went to a bar operated by P. S. Sheridan and Victor V. Sheridan at Toltec, in Pinal County, Arizona, in which bar were a number of slot-machines. He stated to the Sheridans that he represented the attorney general and displayed a badge to such effect. P. S. Sheridan testified: "Well, he had seen these slot-machines and informed me they were illegal and said it might be practical

to make a little donation" and "Mr. Christy told me it would be necessary to make the payment; he represented John L. Sullivan and we would have to make payments on machines or we couldn't run". Victor V. Sheridan testified that Christy said "he couldn't do anything for me, he couldn't offer any protection. We asked him if he could and he said he couldn't offer any protection". The Sheridans paid Christy "$15.00 or $25.00". Victor V. Sheridan testified that the money was pay "to keep him from causing us trouble". On July 30, 1946, R. W. Cassady drew a check on a New Mexico bank payable to cash in the sum of $300, which check was endorsed by appellant Christy at the Valley National Bank in Phoenix. Sometime during the summer of 1946 (the witness A. C. Haile first testifying "in the summer" and then on further questioning "in September, 1946") appellants Sullivan and Christy were seen one day associating together at Yuma, Arizona. In September, 1946, appellant Christy went to Harry Osborne, operator of a service station, bar, and curio store east of Holbrook and stated he represented the attorney general's office and exhibited a badge to such effect. Osborne testified: "He told me he was up to confiscate my slot-machines" but would make a deal with him for $10 per week. Osborne further testified: "I asked him if that would give me full protection from all officials concerned. He says 'no' it had nothing to do with the county. It is just the attorney-general's office alone". As to

his slot-machines, Osborne testified that Mr. Cassady ran the machines "I got 80% and he took 20%". Osborne paid Christy no money, and stated he did not know Sullivan or Hendricks. In October, 1946, appellant Sullivan introduced the defendant Hendricks to the county attorney of Mohave County, at Kingman, Arizona, with whom, in the absence of Sullivan, Hendricks discussed establishing a zoo and several games on "the Strip, up at Littlefield, Arizona, on Highway 91". In October, 1946, also, Hendricks posted a cash bond in the sum of $3,000 for two gamblers arrested in Pima County and later employed an attorney for them, paying such attorney's fee as well as the fines of the gamblers. On October 18, 1946, R. W. Cassady drew a check on a New Mexico bank payable to cash in the sum of $250 which check was endorsed by Christy at the Valley National Bank in Phoenix. During the latter part of November, 1946, the defendant Hendricks was introduced by Sullivan to the justice of peace at Littlefield, Arizona. The justice of peace, Robert Reeber, as to Sullivan testified: "He said he wanted me to meet Mr. Hendricks; he was an old-time friend; he was a retired patrolman from California and he was going to change his vocation and was choosing Arizona to put up his business and he was considering putting up a zoo and he thought this was a good place". About ten days later Hendricks alone saw this justice of the peace at Las Vegas, Nevada, and discussed the establishment of a zoo

at Littlefield. Thereafter, during November, 1946, Hendricks did establish and for a few days operated a zoo at Littlefield. In January, 1947, at Phoenix, Arizona, Sullivan stated to the sheriff of Apache County and at Winslow, Arizona, to the county attorney of such county that it was all right with him for slot-machines to operate in their county. In January, 1947, also at Phoenix, Sullivan asked I. V. Bowen, of Reno, Nevada, "to get the gamblers in Reno to build a casino in Phoenix" and told him "I will give you the full protection of the attorney-general's office here". During January, 1947, too, Hendricks visited the county attorney of Apache County, stating that he had just left "our mutual friend, John L. Sullivan" and then sought to bribe such county attorney to allow games to operate at Log Cabin Trading Post. During the first part of February, 1947, Hendricks for a period of from eight to ten days operated a zoo and in connection with it conducted gambling games at Wilcox, Arizona. Lee B. Hornbeck testified that Hendricks, in the course of his operations at Wilcox, made the statement that he "had to pay John L. Sullivan $250 in order to stay open". In February, 1947, also, Hendricks approached a highway patrolman at Holbrook, Arizona, to bribe him and another patrolman to refrain from reporting complaints of gambling at Log Cabin Trading Post, in Apache County. Subsequently, on February 20, 1947, Hendricks was arrested on a bribery charge and thereafter convicted.

In March, 1947, Sullivan stated to the county attorney of Navajo County: "Hendricks is one of my investigators. I sent him up here" and "I want you to dismiss this case against Hendricks". Later, Sullivan, in his capacity as attorney general and on his official letterhead wrote the county attorney of Navajo County to the same effect. In May, 1947, prior to the first trial in this cause, Sullivan sent an emissary to Yuma in an endeavor to have A. C. Haile, whom he understood was to be subpoenaed as a witness for the state, take a paid vacation outside the state while the trial was on.

The position of appellants as to the evidence of the state being insufficient to sustain the verdict and the judgment on the two counts under which they were convicted may be summed up under three heads: (1) The evidence was of mere association between defendants which is insufficient to establish a conspiracy; (2) The evidence of the acts and statements of defendants alone without further independent proof of the conspiracy was incompetent to prove such conspiracy; (3) The evidence of acts relied upon as "overt acts", in contemplation of law did not show such acts to be "overt acts".

■■■ Under the charges made in counts 1 and 2 of the information and the particulars alleged in support thereof it was necessary for the state to prove that the defendants agreed together to protect R. W. Cassady from criminal prosecution in his

operation of slot-machines in violation of law at Chamese Lodge in Apache County. Territory v. Turner, 4 Ariz. 290, 292, 37 P. 368. Aside from evidence of independent acts and declarations of defendants, the proof was that Sullivan and Christy one day were seen associating together at Yuma, and that Sullivan and Hendricks were together at Kingman and Littlefield, Arizona. There was no evidence of the purpose of Sullivan and Christy meeting together at Yuma. As to evidence resting merely on suspicion because of association between parties in charges of conspiracy the authorities say: "Conspiracies cannot be established by suspicions. * * * Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense." People v. Long, 7 Cal.App. 27, 93 P. 387, 390. See also People v. Linde, 131 Cal.App. 12, 20 P.2d 704, 707; People v. Yant, 26 Cal.App.2d 725, 80 P.2d 506, 511; Dong Haw v. Superior Court, 1947, 81 Cal.App.2d 153, 183 P.2d 724, 725; Underhill's Criminal Evidence, 4th Ed., Sec. 775, p. 1409.

We therefore are of the view that aside from acts and declarations of the parties the conspiracy with which the defendants were charged could not be established by evidence of mere association between them.

Evidence of various independent acts and statements of each of the defendants was introduced. The state's theory manifestly was that such evidence tended to show a conspiracy existing or to have been established. With the exception of the introductions by Sullivan of Hendricks to the county attorney at Kingman and to the justice of peace at Littlefield, the acts and statements of each of the defendants were done and made in the absence of, and so far as shown by the evidence, without the knowledge of any of the others. None of such acts and statements pertained to the alleged conspiracy nor could it fairly and reasonably be inferred that they were done and made to further the alleged objective of the conspiracy, namely, the protection of Cassady from criminal prosecution. Such acts and statements clearly were extrajudicial. With reference to extrajudicial statements, in Ex parte Decker, 65 Ariz. 122, 125, 175 P.2d 204, 206, we said:

" * * * An out-of-court or extrajudicial statement of an alleged coconspirator not in furtherance of the conspiracy is not admissible against a coconspirator where made in his absence. The rule is established by the great weight of authority. * * *"

In People v. Irwin, 77 Cal. 494, 20 P. 56, 58, in speaking of such statements it is said:

" * * * The existence of a conspiracy was a fact to be proven in the case.

* * * * * *

"To admit such declarations—such hearsay testimony—in proof of the conspiracy

itself would * * * in charges of criminal conspiracy, render the innocent the helpless victims of villainous schemes, supported and proved by prearranged and manufactured evidence of the promoters thereof."

This rule in People v. Linde, 131 Cal. App. 12, 20 P.2d 704, 707, was expressed as follows:

"Manifestly, the declaration of a coconspirator may not be used to establish the fact of the existence of the conspiracy for the declaration or statement is pure hearsay unsanctified by the solemnity of an oath and incapable of being subjected to the test of cross-examination. * * *"

Even when acts and statements directly or by inference pertain to the alleged conspiracy or its objectives, evidence thereof does not become competent until the conspiracy itself has been shown independently. In State v. Erwin, 101 Utah 365, 120 P.2d 285, 298, 309, 310, it is said:

"It is contended that the testimony of Holt and the other accomplices cannot be used to prove the corpus delicti. This on the ground that extrajudicial declarations of an agent may not be used to prove agency. Although, after agency has been proved by other evidence, such declarations may be used to prove other issues against the principal if he is a party to the action. There are two reasons for this rule: One is that the extrajudicial declarations, offered to prove the facts in such declarations asserted, are excluded by the hearsay rule. See Jones on Evidence, 4th Ed., 559, Sec. 297; 22 C.J. 194; Wigmore on Evidence, 2nd Ed., Sections 1360 to 1363. And until agency is proved such declarations are immaterial but become admissible as an admission or disserving statement of the principal, if he is a party to the action, when agency is proved. And it would be begging the question to admit the declarations of the agent because he is the agent of his principal, and then prove that he was in fact the agent of his principal because he so stated in his declaration.

* * * * * *

"The acts and declarations of a conspirator, when said or done in furtherance of the conspiracy and during its continuance, are admissible in evidence, when it is shown that a conspiracy exists and that the defendant against whom the evidence is offered and the person making the declarations are parties to the conspiracy. Each conspirator being the agent of his co-conspirator; his statements in furtherance of such conspiracy are binding on all. 16 C.J. 647, Sec. 1287; 22 C.J.S., Criminal Law, § 756.

* * * * * *

"While the declarations of an agent or a conspirator may be used against his principal or co-conspirator, when that relationship is established by proper evidence, agency by reason of being a co-conspirator cannot be proved by the declarations of the agent."

In Washington, that the existence in some manner of the conspiracy must first be shown before evidence of independent acts and statements becomes competent is set forth in State v. McGonigle, 144 Wash. 252, 258 P. 16, 18, in the following language:

"It is true, there need be no evidence of a formerly expressed agreement between the alleged conspirators. Conspiracies are seldom susceptible to such proof. But if there is evidence, circumstantial even, of a meeting of the minds and unity of design and of co-operative conduct which could only mean that there was such an agreement, that would be sufficient foundation for the admission of evidence of subsequent independent acts and declarations of each of the parties as against any one of them. * * *"

■ We are satisfied, after reviewing the authorities, that in the instant case the evidence of the independent acts and statements of the defendants was incompetent for the purpose for which introduced.

In Section 43-1102, Arizona Code 1939, it is provided:

"No agreement, except to commit a felony upon the person of another, or to commit arson, or burglary, amounts to a conspiracy, unless some act besides such agreement, be done to effect the object thereof by one (1) or more of the parties to such agreement."

The overt acts in the present case alleged in counts 1 and 2 of the information were that the defendants pursuant to and in furtherance of the alleged conspiracy and for its purpose, on July 30, 1946, received the sum of $300 and on October 18, 1946, the sum of $250 from R. W. Cassady. The evidence presented in proof of such acts was that on July 30, 1946, R. W. Cassady drew a check in the sum of $300 payable to cash, and on October 18, 1946, a check in the sum of $250, also payable to cash, which checks subsequent to their respective dates were endorsed by the appellant Christy. There was no evidence presented by the state in its case in chief as to the purpose for which the checks were given, nor was any evidence thereof introduced in the state's rebuttal although Christy, in his own defense, had testified that the checks were in payment for slot-machines he had sold to Cassady.

"Conspiracy at common law is a combination between two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means.

* * * * * *

"The elements of a criminal conspiracy have been stated to be: (1) An object to be accomplished. (2) A plan or scheme embodying means to accomplish that object. (3) An agreement or understanding between two or more of the defendants

whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the agreement, or by any effectual means. (4) In jurisdictions where the statutes so require, an overt act. * * *" 15 C.J.S., Conspiracy, § 35.

Our statutes provide that an overt act must be expressly alleged and proved. Sections 43-1102, supra, and 44-1813, A.C.A.1939. See Territory v. Turner, 4 Ariz. 290, 37 P. 368; State v. Cassady, 67 Ariz. 48, 190 P.2d 501. The unlawful combination is the essence of criminal conspiracy. In the instant case there is nothing in the evidence to indicate that Sullivan, Hendricks, and Christy had entered into any criminal combination or conspiracy to pervert and obstruct justice and the due administration of the law of Arizona by conspiring to protect R. W. Cassady from criminal prosecution in the operation of slot-machines. No evidence was offered to indicate that Hendricks and Christy were acquainted with each other prior to the date the crime was alleged to have been committed. The receiving of the checks by Christy was an act but not an overt act within the meaning of the law. An "overt act" is an act done by one of the parties to carry out an intent, and it must be such as would naturally effect that result; at least, it must be a step toward the execution of the conspiracy. Williams v. State, 16 Okl.Cr. 217, 182 P. 718. The jury undoubtedly did not believe Christy's testimony to the effect that he had received the checks in payment for slot-machines; but if he did not receive the money for the purpose he stated, for what purpose did he receive the money? This purpose the state wholly failed to establish. It might have been a circumstance or an overt act from which it could have been inferred that it was in furtherance of the conspiracy, provided the conspiracy had been established. There was no evidence to establish a conspiracy other than the bald statements of Christy that he was Sullivan's agent. As we have pointed out, agency cannot be established by the mere declaration of the so-called agent. Nor can agency be established by the fact that Christy had at one time been a client of Sullivan's; that they were acquainted; and that sometime prior thereto they had been seen together in Yuma. The overt act here alleged, as far as the record discloses, was not a part of any conspiracy between Sullivan and Hendricks, nor was it an overt act in furtherance of the alleged conspiracy between Sullivan, Hendricks, and Christy for the reason that there was no evidence reasonably, or at all, tending to establish the existence of the conspiracy charged.

The defendant Hendricks did not appeal, but by Rule 416, Rules Cr.Proc., Section 44-2504, A.C.A.1939, it is provided:

"Appeal by any one of several defendants—When several defendants are tried

jointly, any one (1) or more of them may take an appeal; but those who do not join in the appeal shall not be affected thereby unless the appellate court shall determine otherwise."

We construe the last part of this rule to confer upon this court the power to reverse, affirm, or modify any judgment of conviction in a criminal case as to any defendant who has been jointly tried, even though he did not join in the appeal nor perfect an independent appeal. Our authority encompasses the right to render any judgment or make any order which is consistent with justice and the rights of the state and any of the defendants when an appeal has been perfected to this court. In view of our disposition of the case it occurs to us that consistency and justice require that the judgment be reversed not only as to the defendants who have appealed but also as to defendant Hendricks.

For the foregoing reasons the judgment of conviction against the defendants John L. Sullivan, J. P. Christy, and Harry T. Hendricks is reversed, and the case is remanded for a new trial.

STANFORD, and LaPRADE, J., concur.

UDALL, J., having disqualified himself, the Honorable WALTER J. THALHEIMER, Judge of the Superior Court of Maricopa County, was called to sit in his stead.