[Civ. No. 26285. Second Dist., Div. Four. May 9, 1962.]

RAYMOND HASKELL HENDRIX et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Mink & Byron for Petitioners.

No appearance for Respondent.

William B. McKesson, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

THE COURT.—Defendants Hendrix, Young, Moss and St. John were charged in six counts of an information with violation of Penal Code, section 337a. In Count I they were charged with conspiracy to violate said section, in violation of Penal Code, section 182. The other counts charge violation of section 337a, subdivisions 1, 2, 4, 5 and 6.

The motion of Hendrix and Young to set aside the information on the ground that they had been committed without reasonable or probable cause was denied (see Pen. Code, § 995), and they now seek a writ of prohibition to prevent further proceedings against them. (See Pen. Code, § 999a.) It is the contention of petitioners that the evidence was insufficient to hold them to answer for any of the offenses charged.

At the preliminary hearing, Donald R. Jones, police officer of the city of Downey, testified that he knew defendant Young to be a convicted bookmaker. On the morning of December 4, 1961, he followed Young and observed him enter and leave various bars in the city of Downey, remaining just a few moments. Officer Jones said that these activities indicated to him that Young was involved in bookmaking and made him suspicious. On December 5, Officers Jones and Fowler followed Young to 8831 Rosecrans, an apartment building, where Young was observed to park his car on the lot and enter apartment Number 7. The apartment was kept under surveillance for the next two days and both Young and Hendrix were seen entering and leaving at various times.

An investigation by the police revealed that the apartment was rented to Hendrix under the name of Ray Williams, and that the telephone at that location was in the name of James Long.

On December 11, petitioners were also seen going to and from a residence of 5602 Autry Street, Lakewood.

On December 14, the officers stationed themselves so that they could observe the residence on Autry Street and could also see a pay telephone booth about a block away. Officer Miller entered the telephone booth and placed a call to a telephone number given him by Deputy Sheriff Scholten. A male voice answered. Miller stated, ''Lucky,'' the male voice replying, ''Strike. Go ahead.'' Miller then stated, ''This is 634. At Tanforan in the 2nd I would like Stylish Maid, 2

across. And in the 4th I would like Dark Way, 5 to win." The male voice replied, "Okay." Miller thereupon signaled to the other officers that the bet had been accepted by the prearranged signal of the waving of a handkerchief. The officers then proceeded to the 5602 Autry address and forced entrance into the house.

Codefendant Moss was there alone in the kitchen. Beside him on the table were various items of bookmaking paraphernalia, including National Daily Reporters dated December 13 and 14, 1961, with markings thereon and various betting markers. One paper had a record of the bet made by Officer Miller, and the telephone bore the number which had been called by Miller. Other Reporters with November dates, with betting markers and owe sheets inside, were found in a cabinet. In the expert opinion of Officer Havlovic the Autry Street house was being operated as a "phone spot" or a relay operation.

After placing Moss under arrest the officers at 11:20 a. m., with a United States Treasury agent, went to the Rosecrans address. Young and Hendrix were leaving the apartment and proceeding to the parking lot. They were placed under arrest. Officer Jones did not see or hear the actual arrest and the arresting officers did not testify. Jones stated that as he arrived at the scene he heard Officer Fowler say, "Let's go." Young and Hendrix turned and walked toward the apartment. When they got to the apartment one of the officers said, "Open it up." Young said, "Open what"? And Hendrix said, "It's all up. It's all over. We're caught. We're dead. I know these people." Hendrix reached in his pocket and took out his key, opened the door, and with a gesture of his hand said, "Entree," whereupon all entered. The officers found upon the person of both Hendrix and Young a copy of the National Daily Reporter for December 14. In a dresser drawer in the bedroom they found a Reporter dated November 22, 1961, and a white slip of paper. They recovered rent receipts issued to Ray Williams and James Long; a gas bill to Ray Williams, and telephone bills to James Long, all for 8831 Rosecrans, apartment Number 7. The piece of paper, with markings thereon, was identified by Officer Havlovic as being a combination betting marker and owe sheet.

Various newspapers, a Los Alamitos program and a racing form dated December 14, 1961, were found in a subsequent search of a barber shop where codefendant St. John was placed under arrest. Betting markers were found in his coat

pocket; also a slip of paper with a telephone number which Officer Havlovic testified he knew to be the number of Hendrix at the Rosecrans apartment. It was established that St. John lived at the Autry Street house, and an employee of the telephone company testified that the number which Officer Miller had called was listed to Rance St. John at 5602 Autry Street.

The question presented to us is whether the evidence of the facts we have just related was sufficient to hold petitioners for the offenses charged. ■ " 'Sufficient cause' and 'reasonable and probable cause' mean such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*Rogers* v. *Superior Court,* 46 Cal.2d 3, 7-8 [291 P.2d 929].) ■■ Reasonable and probable cause may exist although there may be some room for doubt, and "in considering the propriety of a motion to set aside an information pursuant to section 995 of the Penal Code, the reviewing court may not substitute its judgment as to the weight of the evidence for that of the committing magistrate. And if there is some evidence in support of the information, the court will not inquire into the sufficiency thereof." (*Perry* v. *Superior Court,* 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529].) Applying these rules to the facts set forth above, it is our conclusion that the evidence was not sufficient to warrant the committing magistrate in holding these petitioners.

■ We look first to the charge of conspiracy. (*People* v. *Cuda,* 178 Cal.App.2d 397, 411 [3 Cal.Rptr. 86]: "The gist of a criminal conspiracy is a corrupt agreement of two or more persons to commit an offense prohibited by statute, accompanied by some overt act in furtherance of the objects of the conspiracy. [Citations.] ■ The existence of the agreement may be established by circumstantial evidence. [Citation.] ■ The agreement may be inferred from the acts and conduct of the defendants in mutually carrying out a common purpose in violation of the statute. [Citations.] ■ It is not necessary that the overt acts be criminal. [Citation.] If such acts are done as a step toward the furtherance of the conspiracy they are sufficient. [Citation.]" ■ *People* v. *Linde,* 131 Cal.App. 12, 20 [20 P.2d 704]: "Conceding that conspiracy is by reason of its very character difficult of proof and that the rule is well established that it may be shown by evidence entirely circumstantial and con-

sisting of independent facts bearing more or less closely or remotely upon the essential fact of a common unlawful design, nevertheless such evidence must at least produce more than a suspicion that a conspiracy existed." *People* v. *Toledo-Corro,* 174 Cal.App.2d 812, 820 [345 P.2d 529] : "We recognize that conspiracies cannot be established by suspicions. There must be some evidence. Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense. (*People* v. *Long,* 7 Cal.App. 27, 33 [93 P. 387].) ▮ Associations together of persons having no criminal intent is not conspiracy. [Citations.]"

▮ Evidence of what the officers observed and found at 5602 Autry Street on December 12, 13 and 14 in no way implicated these petitioners nor can it be inferred that the acts of Moss on these dates were in furtherance of a common plan with these petitioners to commit a crime. Thus the evidence wholly fails to warrant holding petitioners under the conspiracy charge, or under any of the other counts insofar as they relate to the Autry Street location.

▮ Since the evidence was insufficient to make out a prima facie case of conspiracy involving petitioners, evidence of the acts and declarations of Moss and St. John are of no value as binding on petitioners. (Code Civ. Proc., § 1870, subd. 6; *People* v. *Tempomgko,* 134 Cal.App. 209, 211 [25 P.2d 245] ; *People* v. *Steccone,* 36 Cal.2d 234, 238 [223 P.2d 17].)

It is a reasonable inference that petitioners did not live in the Rosecrans apartment, but the officers did not see or hear what went on within the apartment, and the acts and conduct of these men which the officers did observe fall short of substantiating the officers' suspicions that they were engaged in bookmaking. The phyical evidence does not assist. The National Daily Reporter, found upon the person of each petitioner, as testified by one of the officers, could be purchased at almost any newsstand. Introduced into evidence also was a slip of paper upon which were notations. ▮ Although, at the hearing, Officer Havlovic expressed the opinion that this was a betting marker and owe sheet, "[t]he Legislature has not seen fit to make possession of 'owe' sheets a crime." (*People* v. *Foreman,* 112 Cal.App.2d 616, 620 [246 P.2d 979].) No attempt was made to show that the handwriting on this slip of paper was that of either of the petitioners; nor is there any indication as to the date it was made. Such documentary material falls short of constituting the working

material of a bookmaker from which an inference can be drawn that the occupancy of apartment Number 7 on December 14th was for the prohibited purpose. (*People* v. *Foreman, supra,* 112 Cal.App.2d 616, 618-620.)

In view of our above conclusion, it is unnecessary to discuss the question of whether the search of petitioners and their apartment was illegal.

Let the peremptory writ of prohibition issue as prayed.