504 P.2d 1296

The **STATE** of Arizona, Appellee,

v.

Joe Ben WEBB, Appellant.

No. 2 CA–CR 299.

Court of Appeals of Arizona, Division 2.

Jan. 17, 1973.

Rehearing Denied Feb. 15, 1973.

Review Denied March 27, 1973.

3. *Cf.*, Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169 (1935). *See also*, Annot., 13 A.L.R.3d 313 et seq., (1967).

**74**

Gary K. Nelson, Atty. Gen., Phoenix, by Howard L. Fell, Asst. Atty. Gen., Tucson, for appellee.

Albert R. Gamble, Tucson, for appellant.

KRUCKER, Judge.

The appellant, Joe Ben Webb, was convicted by a jury on two counts, Count I—attempting to gain money by a confidence game, and Count II—conspiracy to commit a confidence game. He was sentenced to the Arizona State Prison for not less than four nor more than five years on Count I, and for not less than 11 nor more than 12 months on Count II, said sentences to run consecutively. From this conviction and the denial of a new trial defendant appeals.

Defendant raises seven questions on appeal:

1. Did the superior court err in the admission of purported statements and confessions made by defendant?

2. Did the court err in refusing to grant the defendant's request to waive trial by jury and to proceed with a trial before the court?

3. Did the court err in refusing to disqualify itself on the defendant's claim of bias and prejudice?

4. Did the court err in overruling objections of the accused in allowing the State's pretrial motion to introduce statements and acts of the alleged co-conspirators prior to establishing its corpus delecti?

5. Did the court err in allowing admission of police officer's testimony in describing the execution of the alleged "con" game?

6. Did the court substantially prejudice the defendant's cause by its actions during the trial?

7. Was there sufficient evidence to support the verdict?

Mr. Sanzone, the alleged victim of the crime, while mailing a letter in the Northgate Shopping Center, was approached by one Jenkins, later identified as Johnny Wells. Jenkins asked Sanzone if he knew where a particular address was. Sanzone answered in the negative. Jenkins then offered Sanzone $100 to give him a ride to the "colored" section of town. Sanzone agreed whereupon Jenkins entered Sanzone's vehicle and they went to the Catalina Pet Store where Sanzone was to do an errand before driving Jenkins to his destination. After leaving the Catalina Pet Store, Jenkins saw a male Negro and asked Sanzone to stop the car so that he could possibly obtain the location of the address from this male, who was later identified as the defendant, Joe Ben Webb. Evidently Sanzone was led to believe by both Jenkins and Webb that neither of the men had known the other before. Webb apparently had knowledge of the whereabouts of the woman Jenkins was seeking and guided them to the address.

Webb went into the house and came out, advising Jenkins and Sanzone that he had found the woman but she had to get dressed. In the meantime, Webb introduced Sanzone to a card game known as "Three-Card Monte," and suggested to Sanzone that they gamble for a while and perhaps win some of the money that Jenkins had been flashing. They initially played for small sums but finally for the sum of $10,000, which was purportedly won by Sanzone. Jenkins allegedly reneged on paying off the bet to Sanzone claiming that Sanzone would not be able to pay him if he had won instead of Sanzone winning. To prove his ability to pay, Sanzone drove to the Tucson Federal Savings office on East Speedway and withdrew the sum of $10,000 from his savings account, which was given to him in a cashier's check. A fourth man, Charles Rockmore, also an alleged co-conspirator, was recruited to hold the Jenkins' money until Sanzone had the cash to prove his capability of paying the wager. The savings office refused to cash the cashier's check saying it was too late in the day. The clerk became suspicious after the men left and notified the

police. Later that evening the police talked to Sanzone and asked his cooperation in apprehending the trio.

Sanzone met the men the following morning and went to the savings and loan office to cash the $10,000 check. Defendant was arrested on the premises and the other two men were apprehended by other police units elsewhere in the city.

## ADMISSION OF STATEMENTS

Defendant claims that he was not advised of his constitutional rights under *Miranda*, but the transcript of testimony clearly indicates that at the time of arrest by Officer Abbott he was fully advised of his rights under the *Miranda* rule.

He further contends that another officer, Sgt. Bunting, who was present and talked to him immediately after he was placed under arrest, did not advise him of his rights. We find no merit to this argument because the law does not require that a person must be advised of his rights each time a new law enforcement officer talks to him. State v. Quinones, 105 Ariz. 380, 465 P.2d 360 (1970); State v. Jennings, 104 Ariz. 6, 448 P.2d 62 (1968). The transcript of testimony clearly shows that defendant was immediately advised of his rights before any questions, statements or admissions were made.

## WAIVER OF JURY

Citing no authority, defendant complains that he alone had the right to waive a jury and therefore it was error to try the case to a jury. The Constitutions of the United States and Arizona clearly give the defendant in a criminal case the right to trial by jury. Article 6 § 17, as amended, of the Arizona Constitution, A.R.S., states:

"  . . . The right of jury trial as provided by this constitution shall remain inviolate, but trial by jury may be waived by the parties in any civil cause or by the *parties with the consent of the court in any criminal cause.*" (Emphasis added)

If a jury is to be waived in a criminal cause, as stated in the Constitution, it must be by the *parties and with the consent of the court.* The defendant cannot claim error if the County Attorney did not consent to a waiver of a jury and the trial court did not err in requiring a jury trial. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965).

## DISQUALIFICATION OF JUDGE

The record clearly shows that the trial judge, without challenge, heard evidence in prior hearings where one or more factual issues were presented. The record also shows that the judge heard motions regarding the impending trial. Where a case has gone this far before one judge without challenge, a litigant cannot peremptorily challenge the judge. State v. Hughes, 13 Ariz.App. 221, 475 P.2d 511 (1970). The trial judge properly stated the position when the motion for disqualification was argued:

"  . . . where the court has heard evidence that will be a part of the trial, which this court has, so I will deny your motion."

## DID THE COURT ERR IN THE ADMISSION OF EVIDENCE OF CO-CONSPIRATORS PRIOR TO THE ESTABLISHMENT OF THE CORPUS DELECTI?

As stated in State v. Sullivan, 68 Ariz. 81, 200 P.2d 346 (1948) and State v. Cassady, 67 Ariz. 48, 190 P.2d 501 (1948), the general rule of law that proof of evidence of a conspiracy should precede any declarations of the co-conspirators is not absolute. Departure from this rule is within the sound discretion of the court. *Sullivan,* supra, does not say that testimony of a co-conspirator cannot be taken prior to proof of a conspiracy, but merely says that such evidence is not competent until the conspiracy has been shown independently. In the case at bar we do not think it was error to allow this testimony, or at least was not an abuse of the trial court's discretion.

# 76

DID THE COURT PREJUDICE THE JURY BY INSTRUCTING APPELLANT'S COUNSEL THAT HE WOULD BE SUBJECT TO CONTEMPT IF HE DID NOT FOLLOW THE COURT'S INSTRUCTION?

■ Defendant claims error in the remarks of the court threatening his counsel with contempt. We have carefully scrutinized the transcript and note a lengthy discussion between the court and counsel as to the method of counsel's objection. At one point the court stated:

"THE COURT: Now, listen very carefully, Mr. Gamble, Mr. Stevens is asking about beliefs, and you are making an objection and saying the same reasons each time.

MR. GAMBLE: Right.

THE COURT: I have ruled on that point of law. He may ask these questions, so you are not to object each time. Your objection is on the record and you are fully protected, but you are not to say objection each time he asks a question. I have ruled on the point of law.

Now, do you understand that?"

\* \* \* \* \* \*

"MR. GAMBLE: Your Honor, I have to pose an objection.

THE COURT: You are going to be in contempt of Court, Mr. Gamble, if you do not follow the Court's instructions. Now, do you understand?

MR. GAMBLE: I, at this time, ask the Court—may I move the Court for a mistrial at this time.

THE COURT: Denied. Denied.

MR. GAMBLE: Very well."

The cases cited by counsel in his brief are not in point. State v. Goodyear, 98 Ariz. 304, 404 P.2d 397 (1965), rehearing, 100 Ariz. 244, 413 P.2d 566; Browning v. State, 53 Ariz. 174, 87 P.2d 112 (1939). These cases point out that a judge should refrain from making unnecessary comments or doing anything which might prejudice or influence the minds of the jurors. We can see no unnecessary or calculated influencing of the jury and believe the court was within its sound discretionary limitations in its dealings with defendant's counsel.

WAS THE EVIDENCE SUFFICIENT TO SUSTAIN THE VERDICT?

■ A reading of the entire transcript reveals ample evidence to sustain the jury's finding that there was a preconceived plan to defraud the victim of a substantial amount of money. We find no evidentiary deficiency as to proof of defendant's guilt.

Judgment affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.