490 P.2d 558

STATE of Arizona, Appellee,

v.

Irvin Paul RITCHEY, Appellant.

No. 1964.

Supreme Court of Arizona,
In Division.
Nov. 11, 1971.

Gary K. Nelson, Atty. Gen. by William P. Dixon and Jerry C. Schmidt, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

HAYS, Vice Chief Justice.

The defendant, Irvin Paul Ritchey, was charged with two counts of child molesting and one count of lewd and lascivious act. The matter was tried to the court without a jury on stipulation of counsel. The court made a finding of not guilty on the count of lewd and lascivious act and guilty on the two counts of child molesting, and imposed a sentence of two to five years on each count to run concurrently.

The alleged victims were two girls, ages four and six. The defendant was a friend of the children's parents and he often came to their home on social visits. The testimony indicates that he was fond of the children.

After ruling that the elder of the children, then age seven, was competent to testify, the court heard testimony from her that the defendant took her and her sister to a place near the airport where they could watch the airplanes. She testified that while they were there, "[h]e done nasty to me."

A short time later the defendant brought the children home. After he left the children's home, the children were asked where they had been by their mother and grandmother. The younger of the children stated, "Ritchey done nasty to us, Mommy." Both children stated that Ritchey had pulled down the pants of the younger child and had moved her up and down on his body. They stated that Ritchey had unzipped his pants and had taken his "thing" out. The elder child also stated that the defendant had pulled her pants down and

played with her private parts. This testimony was received from the mother and the grandmother of the children who were relating what the children had told them. The defendant raises several contentions of error in his appeal.

■ Defendant's initial argument raises the question of the validity of a waiver of trial by jury when made by counsel for defendant in chambers and out of the presence of the defendant. The record of the proceedings below shows that the waiver was accomplished by stipulation between counsel for the defense and counsel for the state. Nowhere in the record is there any indication that the defendant participated in the decision to waive his right to a jury trial, or that he, in fact, was aware that he had such a right.

The right of trial by jury is among the fundamental rights bestowed by the Sixth and Fourteenth Amendments of the United States Constitution. It is a right, however, which may be waived by a defendant if he so desires. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930). In the *Patton* case, the Supreme Court designated guidelines by which to determine whether a waiver has been validly made. The Court stated:

> " * * * before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, *in addition to the express and intelligent consent of the defendant.*" (emphasis added.)

This court has ruled that a knowing and intelligent waiver of trial by jury may be made through counsel in the presence of the accused and need not be made by the defendant personally. State v. Jelks, 105 Ariz. 175, 461 P.2d 473 (1969). It was there stated that if a defendant permits his attorney, *in his presence* and without objection on his part, to waive his right to

trial by jury, "[he] must be held to have knowingly acquiesced in that decision." State v. Jelks, *supra*, at 178, 461 P.2d at 476. It was further stated that:

> "[I]n view of the importance of the right of a trial by jury as a fundamental right, it is doubtful that a written waiver signed only by the attorney *or an oral waiver by counsel out of the defendant's presence* would be sufficient waiver without something of record to show authorization or ratification by the defendant." at p. 178, 461 P.2d at p. 476. (emphasis added.)

We adopt the views expressed in the above language as the law of this case and state that because the record fails to show whether, in fact, the defendant did authorize or ratify the action of his attorney in waiving his right to jury trial, this matter must be remanded for a hearing by the trial court to determine whether the waiver was, in fact, knowingly and intelligently made.* The trial court must make findings of fact and refer the matter back to this court.

We specifically recommend that the waiver of such fundamental constitutional rights as the right to jury trial be accomplished in the defendant's presence, and, if possible, with his express consent.

We reject the argument of the state that the defendant evidenced his consent to a trial without a jury by sitting through a bench trial without objecting to the absence of a jury. It cannot be presumed that the defendant was aware of his right to make such an objection. *See* People v. Turner, 80 Ill.App.2d 146, 225 N.E.2d 65 (1967). The burden of coming forth and asserting one's own basic constitutional rights cannot be placed upon persons who may be reluctant to take such affirmative action before the court. By this position we do not intend to infer that counsel can-

---

\* *See* People v. McKinney, 126 Ill.App. 2d 339, 261 N.E.2d 797 (1970), a case on all fours with the one before us. There, counsel stipulated to a bench trial out of the presence of the defendant, and

the Appellate Court of Illinois held that the matter must be reversed because there was no showing that the defendant understandingly waived his personal privilege to trial by jury.

not himself make the decisions of trial strategy which often require the waiver of rights or the abandoning of positions. This rule is meant to apply to basic *constitutional* rights heretofore delineated by the United States Supreme Court.

■ We turn to defendant's additional contentions. He claims that he was denied his Sixth Amendment right of confrontation when the court examined the prosecuting witness as to her competency to testify in his absence. This examination took place in chambers with attorneys for defendant and for the state present. We do not find the same compelling need for a defendant to be present at such a proceeding as we find when a personal constitutional right, such as trial by jury, is at stake. Here, a defendant's attorney can adequately exercise the defendant's rights. The determination of the competency of a witness to testify is a matter of law to which legal counsel is specially qualified to address himself. The defendant cannot show that he was prejudiced by the procedure employed herein.

■ The defendant raised objection at the trial to the admissibility of the out-of-court statements of the elder child to her mother and grandmother concerning the alleged molesting of the children. The trial court admitted them as an exception to the hearsay rule as spontaneous or excited utterances.

The facts germane to deciding whether, in fact, the statements qualify under the exception are as follows: At about 7:00 P.M., the defendant and the children returned to the children's home. The defendant talked with the parents and grandmother of the children for about ten minutes and then left to buy some beer. He returned with the beer in about ten or fifteen minutes and left the house a few minutes later. It was at this time that the children's mother first asked them where they had been. The children then related the statements which are the subject of the defendant's objections.

The mother of the children testified that the children liked being with the defendant. He would visit the house at least two or three times a week to play with them and twice a month or so the children would spend the night with the defendant and his wife.

When asked to describe the demeanor and appearance of the girls at the time they returned with the defendant, the mother stated that the face of the elder child was streaked as though she might have been crying. She also stated that where the children were usually rowdy and playful when they arrived home, on this evening they were very quiet. The children would always place themselves near the defendant, sometimes sitting on his lap to talk to him, but on this night they stayed to themselves in another room of the house. The mother stated she had never seen the children act in this manner when the defendant was in the house. She also stated that the defendant himself, though still friendly, was somewhat withdrawn.

The children's grandmother likewise testified that the children did not seem as happy as usual and were not playing with the defendant or having anything to do with him. When asked to take their toys and play, they stated that they didn't want the toys because the defendant had given the toys to them.

This court, in reviewing fact situations involving the excited or spontaneous utterance exception has followed the test laid down by Wigmore. The three requisites that compose this test are these:

1. There must be a startling event.
2. The words spoken must be spoken soon after the event so as not to give the person speaking the words time to fabricate.
3. The words spoken must relate to the startling event.

   6 Wigmore on Evidence (3rd ed.) § 1750.

The existence of a startling event is deemed necessary to produce the type of

excited utterances which the courts accept to be reliable notwithstanding their hearsay character. In deciding whether there was evidence of a startling event, special notice must be taken of the age of the children involved and the identity of the perpetrator of the crime. The children were four and six years of age at the time of the crime and could have known little if anything about sexual matters. When asked if she had ever discussed sex with the children before, the mother replied she had not.

In addition, the alleged perpetrator of the crimes was a good friend of the family as well as a companion to the children. Therefore, it would not seem strange, taking into consideration the age of the children, that they should not have shown even more visible signs of excitement or distress, or have spoken up immediately about what had transpired. The children may well have been persuaded, as the testimony indicates, that what they were doing was all right. Therefore, under this specific fact situation, the court will adopt a less strict test by which to determine if, in fact, the evidence indicated a startling event.

There is no requirement that the evidence show the children to be hysterical; the evidence indicates that their demeanor and actions were considerably altered. Their demeanor and actions were sufficient evidence of a startling or shocking event, notwithstanding the children did not volunteer their information until questioned. See State v. McLain, 74 Ariz. 132, 245 P. 2d 278 (1952).

The second requisite—that the words be spoken soon after the event—is satisfied as well. The testimony revealed that the children did not make any statement about the acts of the defendant until approximately forty-five minutes after they had returned home, and then they spoke only in answer to their mother's questions. The children may not have understood that what had happened was as startling as it might appear to others. In addition, the courts have recognized that the time interval when children are involved should be less

fixed since they are less likely to employ their reflective powers to fabricate a deliberate untruth. Soto v. Territory, 12 Ariz. 36, 94 P. 1104 (1908).

In that the words spoken did relate to the startling event, we find that the statements in question meet all the requisites of spontaneous or excited utterances and were properly admitted into evidence. State v. Lopez, 107 Ariz. 214, 484 P.2d 1045 (1971).

█ The defendant's next contention is that it was error to admit the testimony of an expert witness with regard to certain exhibits when there was no evidence that these exhibits were held in an uninterrupted chain of custody. The exhibits included clothing from the defendant and the two children, a cotton swab, a pubic hair found on the person of one of the children, and pubic hair removed from the defendant.

Evidence at the trial indicated that the above items were removed by investigating officers from the defendant and the children and given to a police detective. The detective transferred the items to a criminologist who examined them and made findings of fact. The detective was unavailable for testimony at the trial and the defendant argues that this break in the chain of possession is fatal to the foundation that need be laid for the introduction of these items in evidence. We disagree.

The investigating officers testified that on receipt of the items, they initialed either the items themselves or the bags in which they were placed. They replied affirmatively when asked whether the items were in substantially the same condition as they were when removed from their owners.

The criminologist who examined the exhibits stated that they were marked by him for identification. He also testified that the items were presently in substantially the same condition as when he received them.

We have held that an exhibit is admissible when it has been identified as being the same object about which testimony is given and when it is stated to be in substantially the same condition as at the time of the

occurrence in question. Witt Ice & Gas Co. v. Bedway, 72 Ariz. 152, 231 P.2d 952 (1951). We further stated, citing Allen v. Porter, 19 Wash.2d 503, 143 P.2d 328 (1943), that it was unnecessary to negative the possibility of an opportunity for tampering with an exhibit, there being no need to trace its custody by placing each of its custodians on the witness stand. Witt Ice & Gas Co. v. Bedway, *supra*, at 156. *See also* State v. McGonigle, 103 Ariz. 267, 440 P.2d 100 (1968).

It is our opinion that the markings made by the investigating personnel and their testimony as to the condition of the exhibits provide sufficient foundation for their admission in evidence, notwithstanding the inability of the state to show a continuous chain of custody. Under such circumstances, unless a defendant can offer proof of actual change in the evidence, or show that the evidence has, indeed, been tampered with, such evidence will be admissible.

■ The defendant contends that a judgment of guilt on counts one and three of child molesting is inconsistent with the judgment of acquittal on count two of lewd and lascivious act, when the evidence to support all three acts was the same. However, it is to be noted that one may commit the crime of child molesting without committing the crime of lewd and lascivious act. A prerequisite of the latter (A.R.S. § 13–652) is that such act be done with the intent of arousing, appealing to or gratifying the lust, passion or sexual desires of either the perpetrator or the victim. This prerequisite is absent in the child molesting statute (A.R.S. § 13–653). Therefore, the evidence may show child molesting without showing lewd and lascivious conduct. In examining the trial record, we find that the court held that there was no physical evidence corroborative of the count on lewdness. The judgments as to the several counts were not inconsistent.

The defendant's final argument is that the finding of guilt is not supported by the court's findings on the evidence. We have held that where there is reasonable evidence to support the factual finding of the trial court, we will not disturb that finding on appeal. State v. Linsner, 105 Ariz. 488, 467 P.2d 238 (1970). In examining the record as a whole, we find that reasonable evidence does exist to support the court's findings.

Cause remanded for proceedings consistent herewith.

UDALL and LOCKWOOD, JJ., concur.