549 P.2d 197

**The STATE of Arizona, Appellee,**

v.

**J. W. LIPPARD, Appellant.**

**No. I CA–CR 806.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 27, 1976.

Rehearing Denied May 25, 1976.
Review Denied July 13, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Ronald L. Crismon, Asst. Atty. Gen., Phoenix, for appellee.

Stewart & McLean, Ltd., by William H. McLean, Phoenix, for appellant.

## OPINION

OGG, Judge.

The appellant/defendant J. W. Lippard was convicted by a jury of one count of fraud under the provisions of ARS § 44–1991 of the Arizona Securities Act. The defendant was sentenced to serve 3 to 5 years and he now appeals from that conviction and sentence.

The defendant was the Vice-President of Great Southwest Land & Cattle Company in charge of finance. Great Southwest was a land sale company which sold unimproved lots in several subdivisions in Arizona. Once a lot sale was consummated, the salesman would prepare the necessary sales instruments and forward them to the processing department at the main company office in Phoenix. The defendant Lippard was in charge of the processing department. The notes and mortgages would then be discounted and sold by an assignment to various mortage brokers who usually paid cash when the notes and mortgages were delivered. The record discloses that numerous sales were not legitimate sales to persons who intended to buy the land; they were in fact simulated sales, generated by the sales department of Great Southwest on overvalued, unimproved land, simply to create more overvalued notes and mortgages for assignment and sale.

The defendant was convicted for his involvement in the sale of the assignment of a fraudulent note and mortgage covering Lot 63, Indian Lakes Unit 1, to Bemis Investment Co. of Scottsdale, Arizona. The defendant's position here and at trial is that he was free of any wrongdoing. He claims that the state has failed to present any evidence linking him with this transaction.

The defendant raises eight issues for review which we will now discuss in the order presented in the briefs:

## I

Are real property notes and mortgages, when negotiated together, securities as covered by Arizona law?

This exact issue was presented to us in the companion case of *State v. Brewer*, 26 Ariz.App. 408, 549 P.2d 188 (1976). It is our opinion, for the reasons set forth in *Brewer*, that the transaction participated in by the defendant falls within the scope of illegal security transactions as covered by the laws of Arizona.

## II

Did the court err in refusing to impose more severe sanctions for the state's violation of Rule 15.1, 1973 Rules of Criminal Procedure?

Rule 15.1, Disclosure by State, reads:

a. Matters Relating to Guilt, Innocence or Punishment. No later than 10 days after the arraignment in Superior Court, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within his possession or control:

(1) The names and addresses of all persons whom the prosecutor will call as witnesses in the case-in-chief together with their relevant written or recorded statements;

(2) All statements of the defendant and of any person who will be tried with him;

(3) The names and addresses of experts who have personally examined a defendant or any evidence in the particular case, together with the results of physical examinations and of scientific tests, experiments or comparisons, including all written reports or statements made by them in connection with the particular case;

(4) A list of all papers, documents, photographs or tangible objects which the prosecutor will use at trial or which were obtained from or purportedly belong to the defendant;

(5) A list of all prior felony convictions of the defendant which the prosecutor will use at trial;

(6) A list of all prior acts of the defendant which the prosecutor will use to prove motive, intent, or knowledge or otherwise use at trial;

(7) All material or information which tends to mitigate or negate the defendant's guilt as to the offense charged, or which would tend to reduce his punishment therefor, including all prior felony convictions of witnesses whom the prosecutor expects to call at trial.

Defendant contends that although he was arraigned on February 28, 1974, the state did not comply with Rule 15.1 until the court imposed sanctions on June 10, 1974, under the provisions of Rule 15.7, Arizona Rules of Criminal Procedure. Under the sanctions imposed the court directed the state, within 48 hours, to produce, copy (at state expense), and provide each defendant with a copy of all police reports, witness statements, a witness list and copies of all documents the state intended to use at trial. The judge further ordered the state to make available for inspection by defense counsel all documents and other tangible objects seized by the police department. The court further imposed a sanction limiting the state's witnesses to only those persons previously disclosed to the defense unless the state could show the defense was aware of the witness.

The defendant acknowledges that the state substantially complied with the court's orders, but claims that the delivery of the documents 10 days prior to the trial while the defendant was engaged in the omnibus hearing, was too late and hindered the proper preparation of the defendant's case. Defendant contends that these sanctions were not adequate and that the state should have been precluded from using this evidence at trial and that the indictment should have been dismissed.

■ The imposition of sanctions for a violation of the criminal discovery rules is in the sound discretion of the trial court and this court will not reverse unless there is an abuse of such discretion. *State v. Kevil,* 111 Ariz. 240, 527 P.2d 285 (1974); *State v. Castaneda,* 111 Ariz. 264, 528 P.2d 608 (1974); *State v. Chavez,* 23 Ariz.App. 606, 535 P.2d 26 (1975); *State v. Birdsall,* 23 Ariz.App. 454, 533 P.2d 1191 (1975); *State v. Fenton,* 21 Ariz.App. 193, 517 P.2d 1086 (1974).

Rule 15.7, Arizona Rules of Criminal Procedure, sets forth the various sanctions that the court may impose for a violation of the discovery provisions of Rule 15.1. Rule 15.7 reads:

Rule 15.7 Sanctions

If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with any provisions of this rule or any order issued pursuant thereto, the court may impose any sanction which it finds just under the circumstances, including, but not limited to:

a. Ordering disclosure of the information not previously disclosed.

b. Granting a continuance.

c. Holding a witness, party, or counsel in contempt.

d. Precluding a party from calling a witness, offering evidence, or raising a defense not disclosed; and

e. Declaring a mistrial when necessary to prevent a miscarriage of justice.

This was a very complicated criminal case in which four defendants were tried in one consolidated trial. The trial lasted 34 days and there are 3544 pages in the transcript. The omnibus hearing held prior to the trial lasted 8 days and has 370 pages in the transcript. The delay in discovery was caused by the conflicts between the state and the various defense attorneys, the chain of evidence problems and the great volume of material. The state was clearly in violation of the discovery provisions of Rule 15.1 and the court quite properly imposed sanctions under the provisions of Rule 15.7. In exercising this discretion as to the proper sanction to be imposed, "the court should take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by continuance, and any relevant circumstances." *State v. Birdsall,* supra; 1 Wright, *Federal Practice and Procedure,* § 260. The ABA *Standards Relating to Discovery and Procedure Before Trial* direct that the trial court should seek to apply sanctions which affect the evidence at trial and the merits of the case as little as possible.

■ The defendant has not shown any specific prejudice from this purported abuse of discretion and it is our opinion that the sanctions imposed were proper under the facts of this case.

### III

Should the court have directed a verdict of acquittal as to amended Count 48?

The amended Count 48 charged the defendant with engaging in a fraudulent transaction involving the sale of a real property note and mortgage identified as mortgage number L–1775, Lot 63, Indian Lakes Unit 1, which was ultimately assigned to Bemis Investment Co.

Defendant claims the only connection he had with this assignment to Bemis Investment was the fact that his signature appeared on the mortgage assignment. He denied any knowledge that this was in fact a fraudulent note and mortgage and testified that the first time he received information that this was fraudulent was after the sale of the assignment had been completed and Mr. James Cornwall had absconded with the proceeds. He explained that it was standard procedure at Great Southwest for both he and Mr. Cornwall to sign assignment instruments in blank so that they would be available as needed and that he had no knowledge that this

particular assignment was going to be used to defraud the Bemis Investment Co.

Defendant asserts that the state failed to carry the burden of proof by the failure to show the defendant had knowledge of the fraudulent nature of the transaction.

Whether there is proof beyond a reasonable doubt is ordinarily a jury question. However, where there is no substantial evidence to warrent a conviction, it then becomes the duty of the court to enter a judgment of acquittal. Rule 20, Arizona Rules of Criminal Procedure, 17 ARS.

On appeal this court must view the facts most strongly in favor of upholding the jury's verdict. *State v. Flowers,* 110 Ariz. 566, 521 P.2d 998 (1974); *State v. Miller,* 16 Ariz.App. 96, 491 P.2d 485 (1972); Any fact discrepancies are for the jury to resolve. *State v. Gay,* 108 Ariz. 515, 502 P.2d 1334 (1972).

The jury obviously did not believe the defendant's version of this transaction and from our review of the record there is substantial evidence of the defendant's participation to justify his conviction on this count.

### IV

Was it error for the state to proceed to trial on an indictment that was allegedly based in part upon perjured testimony before the grand jury?

This exact question was raised by co-defendant Gerald F. Brewer in the case of *State v. Brewer,* supra. For the reasons stated in the *Brewer* opinion, we do not find that the alleged perjured testimony was material to this defendant's case and therefore find no error.

### V

Should the defendant's motions to suppress based upon unreasonable searches and seizures have been granted?

This exact question was also presented to this court in the *Brewer* case. Our review of the record discloses that this defendant consented to the search and seizure of the records of Great Southwest. For the reasons set forth in *Brewer* we find no violation of defendant's Fourth Amendment rights.

### VI

Should the court have granted defendant's motion to dismiss because of the state's failure to preserve evidence?

Defendant alleges that the state released approximately 80% of the records of Great Southwest without authority. Defendant further complains that tape recordings of two witness interviews and two telephone conversations were either lost or destroyed.

The record discloses that the Phoenix Police Department released a large volume of the records of Great Southwest to the United States Bankruptcy Court for use in a matter pending in that court which required the records of Great Southwest. Nothing is shown that would have prevented any party from inspecting and using these records upon proper application.

The defendant makes the broad allegation that the state's failure to properly preserve these records and tapes prevented him from receiving a fair trial. There is no specific claim that any certain record or tape would have been favorable to the defendant's case and no allegation that they were crucial to show defendant's innocence.

In the case of *State v. Brewer,* supra, this same issue relative to the missing tapes was raised by the co-defendant Brewer. We believe the reasoning in that case applies equally to this defendant's contentions on this issue. For the reason set forth in *Brewer* we believe the court was correct in denying this defendant's motion to dismiss.

### VII

Did the court abuse its discretion when it denied defendant's motion to sequester the jury?

Rule 19.4, Arizona Rules of Criminal Procedure, 17 ARS (1973) provides for

the discretionary sequestration of a trial jury. This is a significant change from the Former Rule 268, 1956 Rules of Criminal Procedure. Sequestration is now permissive rather than mandatory when requested by any party.

The defendant acknowledges that the court has discretion but alleges there was an abuse of discretion when the court refused sequestration in this case because of the massive radio, television and newspaper publicity which occurred before and during the trial.

■ Pursuant to Rule 19.4 the court properly instructed the jurors "not to-converse among themselves or with anyone else on any subject connected with the trial, or to permit themselves to be exposed to news accounts of the proceeding, or to form or express any opinion thereon until the action is finally submitted to them." There is no claim that any juror read, saw or listened to any accounts of the trial during the course of the trial and the defendant candidly admits he cannot show that the publicity prior to trial actually prejudiced the jury. We therefore find that the trial judge did not abuse his discretion in his refusal to sequester the jury. See *State v. Fassler*, 108 Ariz. 586, 503 P.2d 807 (1972); *State v. Hoffman*, 78 Ariz. 319, 279 P.2d 898 (1955).

The defendant, as a part of this same argument, objects to the improper comments made to the bailiff by one juror in the presence of two other jurors. This jury conduct matter was also raised by the co-defendant Brewer in *Brewer* and we adopt the reasoning expressed in that case. Using perfect hindsight we agree that if the judge had sequestered the jury these improper remarks could have been avoided and that it might have been the wiser course of action to have sequestered the jury as requested. However, under the facts as they existed when the judge made the decision, we find no

abuse of discretion and as we pointed out in the *Brewer* case, we believe the trial judge properly handled the juror misconduct when he removed the three jurors from participation in the final verdict. Fortunately, in this case with multiple defendants, there were sufficient remaining jurors to render a legal verdict.

## VIII

Was the jury verdict of "guilty" on amended Count 48 irreconcilably inconsistent with the verdicts of "not guilty" on the other related counts?

The defendant was charged with 37 counts of fraud in the purchase or sale of securities. At the close of the state's case the court granted defendant's motion for directed verdicts as to 19 of the original counts and the remaining 18 counts were submitted to the jury. Three of these counts alleged fraudulent assignments of mortgages to Bemis Investment Co. The defendant was found guilty of only one count—which was count 48—involving one of the Bemis Investment Co. transactions. Defendant argues that it was totally and completely inconsistent for the jury to find the defendant guilty on one of the Bemis transactions and not guilty as to the other two almost identical Bemis transactions.

■ This precise question was determined by the Arizona Supreme Court in *State v. Zakhar*, 105 Ariz. 31, 459 P.2d 83 (1969), wherein the court held that consistency between verdicts on several counts of an indictment is unnecessary. See *State v. Burrow*, 13 Ariz.App. 130, 474 P.2d 849 (1970).

For the reasons stated herein and in the companion case of *State v. Brewer*, supra, we affirm the conviction and sentence.

DONOFRIO, P. J., and FROEB, J., concurring.