549 P.2d 188

**The STATE of Arizona, Appellee,**

v.

**Gerald F. BREWER, Appellant.**

**No. I CA–CR 823.**

Court of Appeals of Arizona,
Division 1,
Department A.
April 27, 1976.
Rehearing Denied June 2, 1976.
Review Denied July 13, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Ronald L. Crismon, John A. Beckstead, Deputy, Maricopa County Attorney, Phoenix, for appellee.

Mickey L. Clifton, Phoenix, for appellant.

## OPINION

OGG, Judge.

The appellant-defendant Gerald F. Brewer was convicted after a jury trial of six counts of fraud in the purchase or sale of securities in violation of ARS §§ 13–331 (B), 13–138, 13–139 and 13–140. The defendant was sentenced to a term in the Arizona State Prison of not less than five nor more than eight years on each count, with the sentences to run concurrently. The defendant now brings this appeal from his convictions and sentences.

The defendant's convictions were based upon his participation in fraudulent land transactions while involved with the Great Southwest Land and Cattle Company. The defendant raises numerous alleged errors that would require a reversal in this case. We will now deal with those issues which we deem warrant discussion in this opinion.

### I

Did the state adequately comply with the provisions of rule 15.1, Arizona Rules of Criminal Procedure, in providing the defendant with discoverable materials?

The defendant asserts that the prosecution did not timely provide him with certain discoverable materials as required by rule 15.1: The defendant does, however, admit that such materials were provided to him by the state after the trial court directed the state to provide the additional discoverable materials pursuant to rule 15.-7(a). The defendant repeatedly asked the court during the trial proceedings to impose sanctions on the state, either by ordering the state to produce certain documents and materials, or precluding the state from using such.

In *State v. Castaneda*, 111 Ariz. 264, 266, 528 P.2d 608, 610 (1974), the court stated:

Rule 15.1(d) governing disclosure was violated, but it is within the discretion of the trial judge as to what is appropriate sanction.

In the present case the trial judge ordered the state to produce those documents and materials which he felt were due the defendant under rule 15.1. The record further indicates that the trial judge did preclude the state from using certain documents and materials.

It is well settled that in order to justify a reversal there must not only be error but error that is prejudicial to the substantial rights of the appellant. Such prejudice will not be presumed but must appear from the record. *State v. Colson,* 17 Ariz.App. 598, 499 P.2d 726 (1972). Nowhere within the record is it indicated that the defendant was prejudiced by the trial court's rulings concerning the discovery of documents and materials pursuant to rule 15.1.

## II

Defendant claims the trial court erred by denying the defendant's motion to dismiss the indictment because of co-defendant Anthony N. Serra's alleged perjury before the grand jury

At the omnibus hearing the deputy county attorney who handled the grand jury proceedings in this case testified that in his opinion the co-defendant Anthony Serra has been untruthful as to his own involvement in the fraudulent practices of Great Southwest. The deputy county attorney also testified that it was his further opinion that Serra had committed perjury in attempting to hide Richard Cohen's involvement in criminal activities. It was further his opinion that none of Serra's suspected untruthful statements involved any of the other co-defendants and that such statements did not affect the grand jury cases involving the defendant Brewer and his co-defendants J. W. Lippard and Thomas E. Cornwall. The deputy county attorney never reported his beliefs as to Serra's untruthfulness to any members of the grand jury or to the presiding judge.

The defendant argues that the charges against the defendant should have been dismissed because of Serra's alleged perjury before the grand jury that returned the indictment against the defendant.

The defendant relies upon the case of *United States v. Basurto,* 497 F.2d 781 (9th Cir. 1974), wherein the court stated at 785:

Today, the grand jury relies upon the prosecutor to initiate and prepare crim-

inal cases and investigate [those] which come before it. The prosecutor is present while the grand jury hears testimony; he calls and questions the witnesses and draws the indictment. With that great power and authority there is a correlative duty, and that is not to permit a person to stand trial when he knows that perjury permeates the indictment.

However, the court further stated:

We hold that the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when *the perjured testimony is material, and when jeopardy has not attached.* [Emphasis added].

The present case can be distinguished from *Basurto* in two ways: 1) the perjurer in *Basurto* admitted his perjury to the prosecuting attorney, and 2) the perjured testimony was material to the defendant's case. In the case at bar the deputy county attorney had only a suspicion that some of Serra's testimony before the grand jury was untruthful. The untruthfulness referred to by the deputy county attorney related to the involvement of Serra and Cohen, not the defendant Brewer. The defendant therefore fails to pass the *Basurto* test by failing to show that the alleged perjured testimony was material to the indictment brought against him by the grand jury.

We therefore find that the trial court did not err in denying defendant's motion to dismiss the indictment on the basis of the allegation of co-defendant Serra's perjury before the grand jury, where such perjury was only the prosecutor's mere suspicion and where such testimony was not material to the grand jury's handing down an indictment against the defendant.

## III

Defendant claims that it was error for the trial court to refuse to suppress evidence seized from the Great Southwest

Land and Cattle Company on grounds that such seizure was in violation of defendant's Fourth Amendment rights

On April 7, 1972, the records of Great Southwest were seized by an agent of the State Real Estate Commission and a part of such records was used to obtain the convictions of the defendant. No search warrant was obtained for this initial seizure. The defendant was not present in the offices of Great Southwest at this time and there is no allegation that he ever consented to the search. On April 13, 1972, and April 25, 1972, the Phoenix Police Department seized these records from the State Real Estate Commission, pursuant to valid search warrants.

■ It is our opinion that the initial seizure without a warrant was valid as a consent search and seizure. At the time the agent of the State Real Estate Commission arrived at the offices of Great Southwest, two of the corporate officers of Great Southwest consented to have the agent remove the Great Southwest records to the office of the State Real Estate Commission.

■ In *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) the Supreme Court of the United States held that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

Under the facts of this case the search and seizure as conducted were valid under the doctrine of *Matlock.* See, also, *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L. Ed.2d 684 (1969).

## IV

Defendant claims it was error to deny his motion to sever his trial from the trial of his co-defendant Anthony W. Serra

■ The defendant relies on the case of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), wherein the court held an accused's right of cross-examination, protected by the confrontation clause of the Sixth Amendment, is violated at his joint trial with a co-defendant who does not testify, when the co-defendant's confession which implicates the accused is admitted into evidence. The defendant claims it was error not to sever when it appeared that prejudicial statements had been made by one co-defendant that would implicate the other co-defendant.

In our opinion this case is governed by the co-conspirator hearsay exception to the hearsay rule and contrary to defendant's contention he is not entitled to a severance simply because a co-defendant may have made statements prejudicial to his case.

In *State v. Skinner,* 110 Ariz. 135 at 144, 515 P.2d 880 at 889 (1973), the Supreme Court of Arizona stated:

Once the conspiracy has been shown a conspirator's extra-judicial statements may be introduced against fellow conspirators in spite of the hearsay rule (citations) and such evidence does not violate the Sixth Amendment . . . In *State v. Sullivan,* 68 Ariz. 81, 200 P.2d 846 (1948), we cited with approval: " 'The acts and declarations of a conspirator, when said or done in futherance of the conspiracy and during its continuance, are admissible in evidence, when it is shown that a conspiracy exists and that the defendant against whom the evidence is offered and the person making the declarations are parties to the conspiracy. Each conspirator being the agent of his co-conspirator; his statements in furtherance of such conspiracy are binding on all. 16 C.J. 647, Sec. 1287; 22 C.J.S., Criminal Law § 756'." 68 Ariz. at 88, 200 P.2d at 351.

A review of the evidence in this case convinces us that the hearsay statements introduced into evidence under the co-conspirator exception to the hearsay rule

contained sufficient indicia of reliability for admission into evidence. Under the particular facts of this case we find no violation of defendant's rights under the Sixth Amendment's Confrontation Clause.

The record shows that in addition to the Brewer and Serra out-of-court statements implicating each other there was substantial independent evidence showing that they were both engaged in a concert of action involving criminal activity.

We believe this case is controlled by *State v. Skinner,* supra; *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) and our recent decision of *State v. Speerschneider,* 25 Ariz.App. 340, 543 P.2d 461 (1975).

 The trial court has discretion in granting or refusing to grant a request for a separate trial and such decision will not be reversed unless a clear abuse of discretion is shown. *State v. Clayton,* 109 Ariz. 587, 514 P.2d 720 (1973). Whether there is an abuse of discretion in the denial of a severance must be based on the showing at the time the motion is made and not what ultimately transpires at the trial. *State v. Clayton,* supra.

We find no abuse of discretion in the trial judge's decision to deny severance.

## V

Should statements made by the defendant to Detective McCracken be excluded because of the Detective's failure to advise the defendant of his MIRANDA rights?

The defendant asserts that he and Detective McCracken worked closely together on several criminal investigations and because of this close relationship McCracken was able to exert undue influence over the defendant in order to make defendant admit certain "lies" he had told and Mc-Cracken also used such influence in getting the defendant to sign an affidavit of forgery. Defendant argues that McCracken should have advised the defendant of his Miranda rights prior to using his "influence" to make defendant admit cer-tain "inaccuracies" in statements he had made and also before he signed the affidavit of forgery.

 Brewer admitting lying to Mc-Cracken during one of the 20 conversations that they had together, beginning April 27, 1972. Although it is true that Brewer was not given Miranda warnings prior to his conversations with McCracken, it is also true that Brewer was at no time in custody and he was well aware he was free to take leave of the detective at any time. Custody is the crucial issue in determining whether Miranda warnings are necessary. *State v. Bainch,* 109 Ariz. 77, 505 P.2d 248 (1973). In *Bainch* the court observed:

> The fact that an officer may be suspicious of an individual is not the test as to whether Miranda warnings must be given prior to questioning, nor is the mere presence of a police officer to be considered a restraint on the suspect's liberty. The vital point is whether, examining all the circumstances the defendant was deprived of his freedom of action in any significant manner, and the defendant was aware of such restraint. In the latter instance the Miranda warnings are required to be given before the statements of the defendant may be received in evidence against him. 109 Ariz. at 79, 505 P.2d at 250.

In the present case, the defendant Brewer was never in custody at the time of his conversations with McCracken. The meetings between the two were always held in such public surroundings as a coffee shop, a hardware store, or a shopping center. Mr. Brewer volunteered to meet McCracken at these various places and at no time was there even a semblance of custody surrounding the meetings.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court of the United States held that:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.

The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. 384 U.S. at 478, 86 S.Ct. at 1630.

■ What Miranda is saying is that even if a suspect is in custody any statements he makes voluntarily, without any interrogation, are admissible in evidence, without Miranda warnings being given. In the present case, if custody were assumed, no interrogation of Brewer was taking place at the meetings but rather the information given to the detective was given freely by Brewer without any mental or physical coercion. See *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The statements were properly admitted into evidence.

## VI

Defendant claims that it was error for the trial court to admit evidence where no chain of custody was established for such evidence

The defendant claims that the state did not properly care for the files after they were seized from Great Southwest. It is asserted by defendant that there was no identification of the files anywhere in the record, and further, more than twenty-five people had access to the files after their initial seizure and prior to the time the Phoenix Police Department came to the State Land Office to pick up the files. The defendant states in his brief that "the only way the state was able to identify the files and indicate that they were in substantially the same condition as when they were originally seized by the police was by Officer McCracken's testimony wherein he reiterated that his initials were on the documents."

■ It is well settled law in Arizona that an object may be received into evidence if it is either properly identified by witnesses or through the establishment of a chain of possession. *State v. Davis,* 110 Ariz. 51, 514 P.2d 1239 (1973); *State v. Lo-*

*pez,* 23 Ariz.App. 554, 534 P.2d 768 (1975). Further, an exhibit is held admissible when it has been identified as being the same object about which testimony is given and when it is stated to be in substantially the same condition as at the time of the occurrence in question. *State v. Ritchey,* 107 Ariz. 552, 490 P.2d 558 (1971). The Supreme Court also held in *Ritchey* that:

It was unnecessary to negative the possibility of an opportunity for tampering with an exhibit, there being no need to trace its custody by placing each of its custodians on the witness stand. 107 Ariz. at 557, 490 P.2d at 563.

■ Detective McCracken testified that he initialed the documents and they were substantially in the same condition as when originally seized by the police. This testimony by Detective McCracken is sufficient under Arizona law to warrant the admission of the files into evidence. See *Davis,* supra, and *Ritchey,* supra.

## VII

Defendant claims it was error for the trial court to refuse to grant a mistrial when Detective McCracken testified that his work centered around the control of organized crime

During defendant's trial, McCracken, when asked about his duties in the intelligence detail of the Phoenix Police Department, answered that his duties consisted of "investigating organized crime." The defendant alleges that the state was improperly trying to insinuate that this particular case involved organized crime. The state denied any such motive and alleges this was a responsive answer to a proper question.

■ Any attempt by the state to prejudice a defendant's case should always be condemned; however, from the record before us we cannot say that this was such a calculated attempt as would require a reversal of this case. The question asked by the deputy county attorney was a proper question. McCracken's answer was not unresponsive, but to the contrary, told the

court and jury exactly what his duties were at that point in time.

█ It is commonly accepted that a person may be examined about his background, occupation and the like for the purpose of aiding the jury to evaluate his testimony and credibility. *Lankford v. Tombari*, 35 Wash.2d 412, 213 P.2d 627 (1950); M. Udall, Arizona Law of Evidence § 45 at 69 (1960). A witness's background may be established by asking him what he is doing and what he has done for a living. *Shepherd v. Gardner Wholesale, Inc.*, 288 Ala. 43, 256 So.2d 877 (1972). It therefore appears it was proper to question the police officer relative to his assigned duties so that the jury could better evaluate his testimony and the source of his knowledge.

### VIII

The defendant argues on appeal that it was error for the trial court to fail to direct a verdict in his favor on the ground that the state never established beyond a reasonable doubt that defendant violated the statute in question

█ It is defendant's contention that the alleged illegal land transactions were "secured transactions" rather than "security transactions" and therefore not covered under the Arizona Securities Act.

The defendant asserts that the trial court erred when it ruled that a note, mortgage and assignment under the circumstances of this case were in fact collectively a "security." Under that ruling such instruments as used herein would come within the purview of ARS § 44–1991, which provides:

It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, including securities exempted under § 44–1843 and including transactions exempted under § 44–1844, directly or indirectly to do any of the following:

1. Employ any device, scheme or artifice to defraud.

2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

Under the definitions sections of the Arizona Securities Act, ARS § 44–1801, et seq., § 44–1801(13) defines a security: "Security" or "securities" include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, certificate of interest in any trust or unincorporated association, any preorganization certificate, agreement or subscription, voting trust certificate, investment contract, any fractional interest in an oil, gas or mineral lease, claim, permit or right, any assignment of subdivided portions of any oil, gas or mineral lease, permit, claim or right which is subdivided for the purpose of a public offering, any certificate of interest in title to property, earnings or profits, or, in general, any instrument commonly known as a security, including any guarantee of, temporary or interim receipt for, certificate for, or warrant or right to subscribe to any of the foregoing.

The provisions of ARS § 44–1991 are almost identical to the provisions of § 77q of the Securities Act of 1933. *Baker v. Walston & Company*, 7 Ariz.App. 590, 442 P.2d 148, 151 (1968).

We find the case of *Hall v. Security Planning Service, Inc.*, 371 F.Supp. 7, 14 (D.C.Ariz.1974), to be directly in point. In that case a land firm, known as Cochise College Park, Inc., was engaged in the business of selling mortgage notes; assigning the mortgages to buyers and guaranteeing payment to investors. In *Hall* the court held that the notes, mortgages and assignments were "securities" under the federal laws and also under ARS § 44–1801(13).

In our opinion the trial court was correct in ruling that the notes and real property mortgages as negotiated in this case were securities within the meaning of the laws of this state.

IX

Defendant argues that it was error for the trial court to permit the prosecution to proceed with its case where certain evidence was destroyed prior to trial which may have tended to establish the innocence of the defendant

Defendant asserts that because certain tape recordings made by Agent Kiefer of the State Real Estate Department, which described his actions when he went to the offices of Great Southwest, were destroyed, such loss of evidence tainted the prosecution of the defendant to the point where the indictment against him should be dismissed. The defendant does not state how the tapes may have tended to show his innocence; rather, he simply makes the broad statement that they may have established his innocence. The record shows the tapes were erased and that a transcript had been made prior to such erasure which was available to all parties.

Defendant cites *United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642 (1971), for the contention that the "government's destruction or loss of evidence is tantamount to a presumption that the materials may have tended to establish defendant's innocence." In *Bryant,* the tapes which were lost or destroyed by the government *were* absolutely crucial to the defendant's case and the lack of such evidence was clearly prejudicial to him. In the present case there has been no showing that the tapes were crucial to defendant's guilt or innocence nor has there been a showing that defendant was in any way prejudiced by the lack of such tapes.

■ In the absence of bad faith or connivance on the part of the government, the destruction of evidence prior to trial does not necessitate reversal of a conviction. *United States v. Henry,* 487 F.2d 912 (9th Cir. 1973). In the case of *U. S. v.*

*Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), the United States Supreme Court, in dealing with this question, held that the unavailability of the tape of a co-defendant's confession did not amount to a denial of due process.

■ To be a violation of the due process clause the state must know, or have reason to know, that the evidence being destroyed was either material or favorable to the accused. *State v. Maloney,* 105 Ariz. 348, 352, 464 P.2d 793, 797 (1970).

■ Thus *Bryant, Henry* and *Maloney* all hold that there is no violation of the defendant's constitutional rights unless the government willfully or negligently destroys evidence that would have been favorable to the defendant's case. The defendant has not shown that in this instance the state either willfully or negligently destroyed the tapes in question. Moreover, there has been no proof that such tapes were crucial to show defendant's innocence.

X

Defendant alleges that it was error for the trial court to deny his motion for mistrial based upon the misconduct of three jurors

During the trial and prior to the close of the evidence, the defendant made a motion for a mistrial based upon the improper conduct of three jurors. After conducting a hearing outside the presence of the jurors, the court denied the motion and directed that these three jurors would be designated as alternates and that they would not take part in the deliberations as to the guilt or innocence of the defendant. The improper conduct complained of occurred near the completion of the trial when one juror, in the presence of two others, asked the bailiff questions pertaining to the case. The juror asked "Can we stick around and watch what goes on afterwards, or do we have to leave . . . ." The bailiff was also asked "What about, can we sit in there and watch, you know, like a sentencing or anything like that?"

Although the import and meaning to be given to these statements is open to debate it appears that one juror, in the presence of two other jurors, disregarded the court's instruction not to form or express any opinions as to the guilt or innocence of the defendant until the case was completed and the jury had retired for deliberations.

Even though there may be some irregularities in the conduct of the jury, absent a showing of prejudice, it is not error for the trial court to fail to declare a mistrial. *State v. Lovely,* 110 Ariz. 219, 517 P.2d 81 (1973).

In this case the three jurors involved in the alleged misconduct did not participate in the verdict and there is no claim or showing that the defendant was prejudiced by the course of action taken by the trial court. We find the trial court's denial of defendant's motion for a mistrial was not an abuse of discretion under the facts of this case.

For the reasons stated herein, both the judgments and sentences of the trial court are affirmed.

DONOFRIO, P. J., and FROEB, J., concurring.