549 P.2d 220

**The STATE of Arizona, Appellee,**

v.

**Anthony N. SERRA, Appellant.**

**No. I CA–CR 802.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 11, 1976.

Rehearing Denied June 16, 1976.
Review Denied July 13, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., and Moise Berger, Maricopa County Atty. by Sidney F. Mitchell, Chief Deputy County Atty., Phoenix, for appellee.

Marvin Johnson, P. C. by J. Douglas McVay, Phoenix, for appellant.

OPINION

OGG, Judge.

The appellant/defendant Anthony N. Serra was convicted of eleven counts of fraud under the provisions of ARS §§ 44–1991, 44–2036(A), 13–138, 13–139 and 13–140. The defendant was sentenced to a term of not less than eight nor more than ten years on each count with the sentences to run concurrently. The defendant now brings this appeal from these convictions and sentences.

The defendant was in charge of sales for the Great Southwest Land and Cattle Company. Great Southwest was a corporation formed to sell lots in several subdivisions in Arizona. Along with legitimate sales, Great Southwest also sold several million dollars in worthless contract paper that had been created by the defendant and others working for Great Southwest. The defendant's sales staff generated simulated sales on overvalued, unimproved land, simply to create more worthless notes and mortgages for assignment and sale. The method of operation involved the hiring of individuals to sign purchase contracts and execute notes and mortgages to Great Southwest. These hired "purchasers" were usually paid twenty-five dollars to sign the papers and were assured they were not responsible for any future payments on the property. These worthless notes and mortgages were then discounted and sold by an assignment to various mortgage brokers who usually paid cash upon the delivery of the instruments.

The defendant was convicted for his involvement in eleven such sales of assignments of fraudulent notes and mortgages.

The defendant raises seven issues for review in this appeal. Six of these issues have been considered and disposed of in the cases of his codefendants: *State v. Brewer,* Ariz.App., 549 P.2d 188 (filed

April 27, 1976); *State v. Lippard,* Ariz. App., 549 P.2d 197 (filed April 27, 1976). These issues will not be discussed again since our opinions in these two companion cases considered defendant's issues and we find no reversible error as applied to the defendant's case.

The defendant raises one new issue that was not considered in the *Brewer* and *Lippard* cases. He asserts that the trial court erred when the judge denied his motion to dismiss twelve counts in the indictment under an agreement made by the defendant and the state. It appears that on August 6, 1973, at a meeting in the Intelligence Office of the Phoenix Police, an agreement was made by William Feldhacker, a deputy county attorney, Lonzo McCracken, a Phoenix Police Officer, and the defendant, Anthony Serra. This agreement was recorded on tape which was later played to the judge at the omnibus hearing when defendant presented his motion to dismiss twelve of the thirteen counts pending against him. The pertinent portions of the agreement had the state agreeing to file only one felony charge against the defendant. The state further agreed that there would be no aggravation hearing and the state would not request any prison sentence be imposed upon the defendant. The defendant agreed to testify before the grand jury as to the true facts and involvement of all parties who were engaged in any fraudulent activities for Great Southwest.

After making the foregoing agreement the defendant testified before the grand jury. The state then decided that the defendant had failed to comply with the agreement in that his testimony was untruthful as to his own involvement and specifically that he had not been truthful as to the involvement of Richard Cohen in the fraudulent activities of Great Southwest. The defendant was thereafter indicted on thirteen counts.

The trial judge refused defendant's motion to dismiss twelve of the counts but did order that the state would be precluded from introducing into evidence any statements made by the defendant after the agreement was entered into between the state and the defendant.

The defendant relies upon the case of *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In *Santobello,* the defendant entered into a plea agreement whereby he would plead guilty provided the state would make no recommendations to the trial court relative to the sentence to be imposed. After the plea bargain was entered into, the state breached the agreement by recommending a maximum sentence which was given to the defendant. The United States Supreme Court held that in the interests of justice the plea bargain should be upheld and the case was reversed and remanded to the trial court with directions to determine whether there should be a sanction of specific performance ordered of the plea agreement or whether the defendant should be allowed to withdraw his guilty plea.

The defendant also relies on the case of *State v. Carlisle,* 111 Ariz. 233, 527 P.2d 278 (1975). In *Carlisle,* the Arizona Supreme Court considered a fact situation where the defendant, the prosecution and the court made an agreement that the case would be submitted to the court on the preliminary hearing transcript and that if the court found the defendant guilty of anything other than first or second degree murder the agreement was no longer in effect and the case would be tried to a jury. The trial court went outside the preliminary hearing transcripts and considered police department records. Our Supreme Court reversed and held that *Santobello* requires the trial court and the prosecution to live up to the agreement made with the defendant.

The state argues that *Santobello* and *Carlisle* have no application to the facts of this case. It is the state's position that the doctrine of *Santobello* applies only to a plea agreement where the defendant has given up valuable constitutional rights.

It is our opinion that under the facts of this case the doctrine of *Santobello* and *Carlisle* has no application. See *United States v. Bridgeman,* 523 F.2d 1099 (D.C. Cir. 1975). In *Santobello* the court was dealing with a plea agreement and in *Carlisle* a rather unique agreement was involved between the court, the prosecution and the defendant. In the case under consideration the agreement was made between the state and the defendant at a time when he was being investigated for his possible involvement in criminal activities. The trial court did not participate in this agreement and had no way to accurately determine if the agreement was in fact broken by the defendant prior to the state refusing to abide by the agreement. The defendant states that he complied with the agreement and the state says he broke the agreement when he was untruthful in his testimony to the grand jury. We have read the testimony before the grand jury; we cannot determine whether Serra did or did not breach the agreement. In *Santobello* and *Carlisle* the breach of the agreement was clearly ascertainable; however, in this case it appears that it would be an impossible task for the trial court or this reviewing court to determine who was initially responsible for the breach of the agreement.

This is not the type of fact situation which falls within the *Santobello* doctrine and in our opinion the trial court was correct in imposing sanctions rather than granting the defendant's motion to dismiss the twelve counts.

For the reasons stated herein and in the companion cases of *Brewer,* supra, and *Lippard,* supra, we affirm the convictions and sentences.

DONOFRIO, P. J., Department A, and FROEB, J., concur.