NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ODECE DEMPSEAN HILL, *Appellant.*

No. 1 CA-CR 12-0627
FILED 11-04-2014

Appeal from the Superior Court in Maricopa County
No.  CR2011-143399-001
The Honorable Connie Contes, Judge

**JUDGMENT AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

Odece Dempsean Hill, Florence
*Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Diane M. Johnsen authored the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Patricia K. Norris joined.

---

J O H N S E N, Chief Judge:

¶1        This appeal was timely filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), following Odece Dempsean Hill's conviction of one count of first-degree burglary, a Class 2 felony; four counts of kidnapping, Class 2 felonies; seven counts of sexual assault, Class 2 felonies; one count of attempted sexual assault, a Class 3 felony; and four counts of aggravated assault, Class 3 felonies.  The court sentenced Hill to consecutive and concurrent sentences of imprisonment totaling 91.5 years.  Hill's counsel searched the record on appeal and found no arguable question of law that is not frivolous.  *See Smith v. Robbins*, 528 U.S. 259 (2000); *Anders*, 386 U.S. 738; *State v. Clark*, 196 Ariz. 530, 2 P.3d 89 (App. 1999).  Counsel now asks this court to search the record for fundamental error.  Hill has filed a supplemental brief identifying certain issues, which we address below.  After reviewing the entire record, we affirm Hill's convictions and sentences, but modify the judgment of conviction to omit the requirement that Hill pay for the cost of DNA testing.[1]

**DISCUSSION**

**A.      Hill's Supplemental Brief.**

**1.      Hearsay.**

¶2        Hill argues a statement the now-deceased victim made to a forensic nurse who testified at trial was hearsay admitted in violation of Arizona Rules of Evidence 802 and 803.  Because Hill objected to the

---

[1]       We directed counsel for Hill and for the State to file briefs concerning whether his rights under the Confrontation Clause were violated by the testimony of a forensic nurse who examined the victim of the sexual assaults.  *See Penson v. Ohio*, 488 U.S. 75, 86-88 (1988).  We address that issue in a separate opinion.  *See* Ariz. R. Crim. P. 31.26.

statement's admission at trial and *in limine*, we review the superior court's hearsay ruling for an abuse of discretion. *See State v. Tucker*, 205 Ariz. 157, 165, ¶ 41, 68 P.3d 110, 118 (2003).

**¶3** Before trial, the State moved *in limine* to admit the victim's statement to the nurse, arguing it fell within the exceptions to the rule against hearsay applicable to an excited utterance, present sense impression and statement made for medical diagnosis or treatment. *See* Ariz. R. Evid. 803(1), (2), (4). The court concluded the statement fell within "one or both or all three" of the cited exceptions. On appeal, Hill argues only that the excited-utterance exception did not apply, and therefore waives any argument that the statement was admissible under the exception to the rule against hearsay applicable to statements made for medical diagnosis or treatment. Ariz. R. Evid. 803(4); *see State v. Robinson,* 153 Ariz. 191, 199, 735 P.2d 801, 809 (1987) (sexual assault victim's statements to practitioner describing assault admissible under Rule 803(4)); *State v. Lopez*, 217 Ariz. 433, 436, ¶ 12, 175 P.3d 682, 685 (App. 2008) (victim's statements to nurse performing a sexual assault examination admissible under same rule).

### 2. Best evidence rule.

**¶4** Hill argues the superior court improperly admitted a handwritten diagram of the mattress from which DNA samples were taken. The diagram documented where biological evidence was located on the mattress. The diagram, Hill contends, violates Arizona Rule of Evidence 1002, the best evidence rule, "because the original was available." There is no merit to this contention. The best evidence rule applies only to situations in which a party seeks to prove the terms of a writing, such as a contract, and does not apply in this context. *See State v. Smith*, 122 Ariz. 58, 62, 593 P.2d 281, 285 (1979).

### 3. DNA evidence.

**¶5** Hill raises various challenges to the DNA evidence admitted at trial. First, he asserts the jury was improperly allowed to hear that the DNA from his buccal swab was a perfect match to the DNA sample from the mattress cuttings found at the scene. The DNA samples collected from the cuttings, he argues, were degraded, making it impossible to get a perfect match.

**¶6** Hill, however, points to no evidence, scientific or otherwise, to support his assertion that a perfect match cannot be obtained from a degraded DNA sample. Indeed, some biochemical techniques are used specifically to enable analysis of degraded DNA samples. *See, e.g.*, *State v.*

*Tankersley*, 191 Ariz. 359, 362, ¶ 7, 956 P.2d 486, 489 (1998) ("[Polymerase chain reaction] is a process for reproducing a short segment of DNA millions of times, making it possible to analyze minute or degraded samples."), *abrogated on other grounds by State v. Machado*, 226 Ariz. 281, 283, ¶¶ 11-13, 246 P.3d 632, 634 (2011). Moreover, the forensic analyst who testified at trial told the jury that the sample that was tested was degraded and that, sometimes, with degraded samples, a full DNA profile may not be obtained. The analyst testified she was able to obtain a profile from three out of the seven mattress samples, but that testimony did not amount to providing the jury with misinformation. *See State v. Gulbrandson*, 184 Ariz. 46, 65, 906 P.2d 579, 598 (1995) (reviewing court does not substitute its judgment for that of the jury and does not reweigh evidence).

**¶7** Next, Hill argues that his due process rights were violated because he was not allowed an independent "secondary DNA analysis." The record does not support this assertion. At trial, the investigating officer testified that samples of DNA evidence were forwarded to Hill to independently test; the record demonstrates that Hill, in fact, did independently test such evidence.

**¶8** Finally, Hill contends that "the impound record of evidence collected at the crime scene was forged." Specifically, he points to the fact that the detective's name is listed as the officer who submitted all evidence collected from the apartment, despite the fact that she testified at trial that she did not submit or impound any evidence from the crime scene. Hill's argument is not entirely clear; he does not identify a ruling by the superior court he intends to challenge. He does argue, however, that the evidence was "unreliabl[e]" and may not have been "true and correct." We interpret this argument as a challenge to the admissibility of all evidence collected from the crime scene - including the mattress cuttings from which Hill's DNA was extracted - due to a deficiency in the chain of custody or a lack of adequate foundation.

**¶9** Normally, "[a] trial court's conclusion that evidence has an adequate foundation is reviewed for an abuse of discretion." *State v. McCray*, 218 Ariz. 252, 256, ¶ 8, 183 P.3d 503, 507 (2008). In this case, however, Hill did not object to the evidence, and we therefore review its admission for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

**¶10** Whether sufficient foundation exists is governed by Arizona Rule of Evidence 901(a). *State v. Lavers*, 168 Ariz. 376, 386, 814 P.2d 333, 343 (1991). The rule provides: "To satisfy the requirement of authenticating or

4

identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Ariz. R. Evid. 901(a). Authentication based on a chain of custody only requires "continuity of possession"; the proponent of the evidence need not disprove every possibility of tampering. *McCray*, 218 Ariz. at 256, ¶ 9, 183 P.3d at 507 (internal quotations omitted); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 336 (2009) (law does not require in-court testimony from each human link in chain of custody). Evidence may be admitted "notwithstanding the inability of the state to show a continuous chain of custody . . . unless a defendant can offer proof of actual change in the evidence, or show that the evidence has, indeed, been tampered with." *State v. Ritchey*, 107 Ariz. 552, 557, 490 P.2d 558, 563 (1971).

¶11        Hill has not presented any information suggesting a likelihood the evidence was tampered with. In fact, Hill stipulated at trial that "the items tested at the lab [were] the same items taken from the crime scene . . . ." Even apart from the stipulation, the record contains evidence of an adequate chain of custody. The detective testified the scene was secured prior to the investigation and that all evidence collected there was recorded. A forensic investigator testified she collected the mattress cover from the apartment, which was later cut, and a DNA analyst confirmed that these cuttings were properly sealed, labeled and initialed when she retrieved the items to test. Moreover, to the extent evidence of this chain of custody conflicts with other evidence, such "concerns go to the weight rather than the admissibility of the evidence." *McCray*, 218 Ariz. at 257, ¶ 15, 183 P.3d at 508; *see also State v. Morales*, 170 Ariz. 360, 365, 824 P.2d 756, 761 (App. 1991). We therefore find no error, much less fundamental error, in the superior court's decision to admit evidence that Hill's DNA was found on material collected from the apartment.

## B.    Due Process Review.

¶12        The record reflects Hill received a fair trial. He was represented by counsel at all stages of the proceedings against him and was present at all critical stages, with the exception of the first day of *voir dire*, for which his counsel waived his presence. Pursuant to Arizona Rule of Evidence 609, the court held a hearing on Hill's prior convictions and allowed him to be impeached with sanitized evidence of his prior felony conviction. The court did not conduct a voluntariness hearing, but the record did not suggest a question about the voluntariness of Hill's statements to police. *See State v. Smith*, 114 Ariz. 415, 419, 561 P.2d 739, 743 (1977); *State v. Finn*, 111 Ariz. 271, 275, 528 P.2d 615, 619 (1974).

**¶13**        The State presented both direct and circumstantial evidence sufficient to allow the jury to convict. The jury was properly comprised of 12 members. The court properly instructed the jury on the elements of the charges, the State's burden of proof and the necessity of a unanimous verdict. The jury returned a unanimous verdict which was confirmed by juror polling. The court received and considered a presentence report, addressed its contents during the sentencing hearing and imposed legal sentences for the crimes of which Hill was convicted.

**¶14**        Our review reveals that in sentencing Hill, the superior court ordered Hill to "submit to DNA testing for law enforcement identification purposes and pay the applicable fee for the cost of that testing." In *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307 P.3d 35, 39 (App. 2013), this court held that Arizona Revised Statutes section 13-610 (2013), which authorizes the collection of DNA samples for certain law enforcement purposes, does not authorize the court to impose a DNA testing fee on a convicted defendant. We therefore hold that pursuant to *Reyes*, which was issued after Hill was sentenced, the court erred by imposing the fee, and we modify the judgment of conviction to omit the requirement that Hill pay for the cost of DNA testing.

**CONCLUSION**

**¶15**        We have reviewed the entire record for reversible error, and, with the exception of the requirement that Hill pay for DNA testing, we find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881.

**¶16**        After the filing of this decision, defense counsel's obligations pertaining to Hill's representation in this appeal have ended. Defense counsel need do no more than inform Hill of the outcome of this appeal and

his future options, unless, upon review, counsel finds "an issue appropriate for submission" to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). On the court's own motion, Hill has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* motion for reconsideration. Hill has 30 days from the date of this decision to proceed, with a *pro per* petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh