658 P.2d 179

The STATE of Arizona, Appellee,

v.

Perl Albert ZUCK and John Valenzuela Madrid, Appellants.

Nos. 2 CA–CR 2406, 2 CA–CR 2407–2.

Court of Appeals of Arizona,
Division 2.

Feb. 10, 1982.

Rehearing Denied March 24, 1982.

Review Granted April 13, 1982.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Phoenix, for appellee.

James L. Gjurgevich, Tucson, for appellant Zuck.

Frederic J. Dardis, Pima County Public Defender by Lawrence H. Fleischman, Asst. Public Defender, Tucson, for appellant Madrid.

## OPINION

HOWARD, Chief Judge.

### I

Appellants were convicted by a jury at a joint trial of two counts each of armed robbery, aggravated robbery and kidnapping, and one count each of first-degree burglary, theft and aggravated assault. Allegations of dangerous nature and prior convictions were also filed. Appellants did not testify at the trial and the record does not disclose any adjudication of the prior convictions. The trial judge found aggravating circumstances and sentenced both to a total of 42 years' imprisonment.

### II

On March 19, 1980, two armed men entered the Tucson home of David Fischer and Jeff Jones, bound and blindfolded them, and then took personal property worth about $2,000 out of the house. Fischer heard a third person who was apparently assisting the two assailants in carrying items out of the house.

About four months later, a person named Donald Ray Brownfield was arrested on a charge unrelated to the March incident. Brownfield subsequently told a detective from the Tucson Police Department that he realized he was in serious trouble and was

willing to do anything he could to avoid going to prison. The detective told Brownfield that if he were going to provide any information which would help him on his own case, it would have to be something "really heavy". Brownfield then told the detective about the burglary of the Fischer-Jones apartment. As a result of the information given by Brownfield, the police conducted an investigation which led to the indictment of Brownfield and appellants.

Appellants' motion to sever their trial from that of Brownfield was granted.

### III

Appellants first attack the action taken by the trial court in response to a note sent by the jury to the trial judge during deliberations. The note, signed by the foreman of the twelve-person jury at 8:55 p.m., stated:

"We have taken 4 votes and cannot agree unanimously on a verdict. There are six of us with opposing votes who are sure that based on the evidence we have our votes will never change. Our last two at 7:10 & 8:45 have been identical."

The trial judge notified counsel of the note and spoke to the jury in open court in the presence of the attorneys. There is no record of what was said because neither a court reporter nor clerk was present. The jury went back to deliberate and at 12:35 a.m. returned the guilty verdicts. The court reporter and clerk were present when these verdicts were returned.

In their motions for new trial, defendants contended that the trial judge made statements to the jury in response to the note which had a coercive effect. The county attorney, in response to the motions, stated that the statements were not made in the presence of the jury, but in chambers. Appellants contend in their motions for new trial that the court erred in making these statements and in denying their motions for mistrial which they claim they made after the receipt of the jury's note.

At the hearing on the motions for new trial the judge said: "Never at any time was there a motion made for a mistrial on or off the record on the basis that you're setting for[th] now; at no time." In response to the argument concerning his alleged coercive statements, the trial judge said:

"It should be pointed out on the record that everything that the Court did in this case, in regards to after the jury went out to deliberate, was done with all three counsel present: counsel for both the defendants and counsel for the State. The Court informed all three counsel exactly of what the Court was going to do. All three counsel agreed that the Court could proceed just exactly in the manner in which it did proceed.

There was never any objection raised by anybody, to my recollection, as to the manner in which I intended to proceed. And I did proceed in exactly that manner. There was never a motion made for a mistrial at any time prior to the jury verdict. . . ."

■ We cannot agree with appellants that reversible error was present. If an attorney wants to attack the comments made by the judge to the jury, he must get those comments on the record. If he makes a motion for mistrial, he must also see to it that his motion is on the record. When the jury went into the courtroom after they sent the note, it should have been apparent to counsel that there was no reporter and no clerk. Counsel's failure to ask for the presence of the court reporter constituted a waiver of the right to have the proceedings taken down and transcribed. *State v. Moore,* 108 Ariz. 532, 502 P.2d 1351 (1972). Their failure to request the clerk also constituted a waiver of the clerk's presence.

■ Counsel had an opportunity to make their record when the jury returned their verdicts. They did not do so. The trial judge claims that no motions for mistrial were ever made, and that the procedure he followed was agreed to by defense counsel. The record does not disclose what the trial judge said to the jury, and we are not going to reverse a case when, as here, no record has been made.

## IV

The day before the trial, defendants received notice that their co-defendant, Brownfield, was going to testify against them. On the morning of the day the trial was to begin, but before the trial actually commenced, appellants moved in limine to preclude the testimony of Brownfield on the ground that he was untimely disclosed as a witness. The trial court denied the motion and directed that Brownfield be made available to counsel for an interview during the lunch hour. The trial court also provided that after the interviews, the court would entertain any motion from defense counsel concerning the testimony of Brownfield.

Defense counsel conducted a taped interview of Brownfield and affirmed to the trial judge that they had fully interviewed him. At that point, no jurors had been selected or evidence taken. Counsel sought no continuance or other relief.

During Brownfield's interview, appellants discovered that he had been in a psychiatric hospital on two occasions. A competency evaluation pursuant to Rule 11, Arizona Rules of Criminal Procedure, 17 A.R.S. had been done in connection with the Brownfield case, and copies of the doctors' reports had been provided to defense counsel. The doctors in Brownfield's Rule 11 hearing had concluded that he could assist his attorney in preparing his defense, and one of them, Dr. LaWall, concluded that Brownfield was sane. The other doctor, Dr. Levy, indicated that he believed Brownfield functioned well as a "well compensated paranoid schizophrenic". The examination under Rule 11 was approximately six months prior to trial. However, the two previous hospitalizations in mental institutions had occurred years prior to the trial.

The state moved in limine to preclude any cross-examination of Brownfield relative to his past psychiatric problems. The trial court granted the state's motion in limine on the ground that any evidence of past mental problems was not relevant.

Appellants now contend that their Sixth Amendment rights to confrontation as well as their right to present impeachment evidence was denied as a result of the court's granting the state's motion. We do not agree.

The right of cross-examination is a vital part of the right of confrontation conferred by the Sixth Amendment. However, the right does not confer a license to run at large in cross-examination. The right to cross-examination must be kept within reasonable grounds, and the trial court has discretion to curtail its scope. *State v. Fleming*, 117 Ariz. 122, 571 P.2d 268 (1977). The mere fact that a person has been diagnosed as a schizophrenic does not mean that he cannot observe accurately, recall what he has observed, and narrate his observations. No offer of proof was made by appellants tending to show that Brownfield's mental illness reflected on his testimonial capabilities or his capacity to have observed the event to which his testimony related. Under such circumstances, the court does not abuse its discretion when it refuses to allow cross-examination on the witness' psychiatric history. See *United States v. Lopez*, 611 F.2d 44 (4th Cir.1979); *People v. Gladney*, 194 Colo. 68, 570 P.2d 231 (1977); *State v. Crow*, 486 S.W.2d 248 (Mo.1972); *State v. Longoria*, 17 Or.App. 1, 520 P.2d 912 (1974); *State v. Harman*, 270 S.E.2d 146 (W.Va.1980); *Sturdevant v. State*, 49 Wis.2d 142, 181 N.W.2d 523 (1970).

Appellants' contention that the testimony about the prior hospitalizations and diagnosis by Dr. Levy should have been admissible because Dr. LaWall indicated that Brownfield felt his "consciousness was altered because he was consuming hallucinogenic mushrooms and cough syrup", and because Dr. Levy's report concludes that Brownfield was probably intoxicated by drugs at the time of the offense is entirely devoid of merit. Counsel were allowed to cross-examine Brownfield at length about his use of drugs. There was no evidence of any connection between his drug use and psychiatric problems.

## V

Appellant Madrid argues that the trial court erred in refusing his motion that

he take a lie detector test so that the result could be considered by the trial court for sentencing purposes. The state opposed the motion. Appellant Madrid recognizes the general rule which precludes admission of the polygraph test at trial unless stipulated to by both parties. *State v. Madsen,* 125 Ariz. 346, 609 P.2d 1046 (1980); *State v. Goldsmith,* 112 Ariz. 399, 542 P.2d 1098 (1975); *State v. Valdez,* 91 Ariz. 274, 371 P.2d 894 (1962). Our Supreme Court has been adament about the reliability of lie detector tests. Of what possible aid could the lie detector test be when used in the sentencing procedure? Suppose the test shows that the defendant is being truthful when he claims he did not commit the crime? Does the trial judge then give him a lighter sentence because he didn't commit the crime? If the lie detector test is to be believed, the trial judge should give him a new trial because he should not send an innocent man to prison. But this cannot be. The reliability of the lie detector test is just as critical at the sentencing stage as at the trial stage. The results of a lie detector test are not admissible in absence of a stipulation. In other words, the procedure set forth in *State v. Valdez,* supra, also applies to the use of lie detector results in a sentencing.

## VI

■ Appellant Zuck contends that he was denied an opportunity to prepare his defense when the trial court allowed the state to present testimony of two witnesses, one being Brownfield, whose names were not disclosed by the state until two days before trial. We do not agree. As previously noted when we discussed the right of confrontation as to Brownfield, the trial court gave defense counsel an opportunity to interview not only Brownfield, but the other witness. It also gave them an opportunity to make any further motions concerning the testimony of these witnesses. Such motions were not made. Rule 15.7, Arizona Rules of Criminal Procedure, 17 A.R.S., authorizes the trial court to impose whatever sanctions it believes are appropriate for violation of the discovery provisions

of Rule 15. The selection and imposition of sanctions are within the sound discretion of the trial judge, and he will not be reversed on appeal unless there is a clear showing of abuse of discretion. *State v. Lippard,* 26 Ariz.App. 417, 549 P.2d 197 (1976). There is no showing here of an abuse of discretion. The trial court gave appellants the opportunity to interview the witnesses and to make further motions. Had appellant Zuck desired more time, then a motion for a continuance should have been made. It was not. There was no abuse of discretion here.

## VII

Appellant Zuck contends that he was denied effective assistance of counsel for three reasons: (1) Because his trial counsel failed to honor his request for a speedy trial; (2) because his trial counsel failed to communicate with him; and (3) because his trial counsel did not adequately prepare his defense.

Zuck was indicted on September 16, 1980. At that time he was in the Arizona State Prison on a prior conviction. He was arraigned on September 24, 1980, and an attorney was appointed. At the time of the arraignment, a trial date of December 16, 1980, was set. On December 13th, Zuck signed and mailed to the court a pro se motion for a fast and speedy trial. Although not disclosed in the court's records, his court-appointed attorney apparently also received a copy of this motion. In this motion Zuck "OBJECTS AND REFUSES TO WAIVE HIS U.S. CONSTITUTIONAL GUARANTEE RIGHT TO A FAST AND SPEEDY TRIAL OR TO CONCENT [sic] TO ANY WAIVER OF SAID RIGHT BY ATTORNEY CARMINE A. BROGNA."

Zuck also stated in this motion that he had reason to believe that a conspiracy against him existed and that the county attorney and his attorney were conspiring to unconstitutionally waive his constitutional right to a speedy trial without his authority. He apparently based this on the fact that the defense attorney refused to answer letters from him, refused to visit him at the

prison, and refused to accept his phone calls. There is no indication that this motion was ever brought to the attention of the trial court.

The trial did not take place on December 16th. There is no explanation in the record for the vacation of that trial date. On January 9, 1981, the state moved to continue the trial for thirty days without objection by the defense. This motion was granted and trial was set for February 12. On the motion of the defendants, the February 12 trial date was continued to March 12. The March trial setting was later continued on defendants' motion to April 8 and this latter date was vacated on defendants' motion to April 28. That is the date that the trial finally took place.

In the meantime, appellant's defense counsel opposed the state's motion for leave to file three prior convictions. He was successful in limiting the prior convictions to one. His counsel also successfully moved to sever his trial from that of Brownfield.

Just before the trial started, Zuck's attorney moved to preclude Brownfield and another witness from testifying. Appellants' defense theory was misidentification. Indeed, David Fisher, one of the victims, testified that Zuck was similar in complexion and build to one of the men who entered the house but he was not positive. However, the state's case was made by Brownfield who had turned "state's evidence". The conduct of Zuck's lawyer during the trial was not ineffective. He objected to the introduction of evidence and conducted a vigorous cross-examination of the state's witnesses. He prepared voir dire questions, proposed jury instructions, and gave a succinct and well-conceived closing argument.

On appeal Zuck now contends that he had a witness who might have somehow neutralized Brownfield's testimony. This argument appears to be no more than an afterthought. Appellant was present when the judge ruled that he could not exclude Brownfield as a witness. He sat through a four-day trial and never revealed the existence of this witness.

The fact that his court-appointed counsel only interviewed him once, does not mean that he was denied effective assistance of counsel. It is the quality of the defense that counts and not the number of times a lawyer talks to his client.

Neither do we believe that he was denied effective assistance of counsel because his counsel refused to honor his request that there not be any continuances. Appellant has shown no prejudice as a result of these continuances. He argues that if it were not for these continuances, Brownfield would not have testified and there would therefore have been no case against him. We do not agree. It is pure speculation to assert that Brownfield would not have testified as a witness in the case if there had been an earlier trial. There was no ineffective assistance of counsel.

## VIII

Zuck's final contention is that he was denied a speedy trial because of continuances made over his explicit objections. We do not agree. A delay sought by his counsel has the effect of waiving the defendant's right to a speedy trial even though done without the knowledge or consent of the defendant. *State v. Kelly,* 123 Ariz. 24, 597 P.2d 177 (1979).

Appellant Zuck sat through the trial for four days and never said anything to the court about his dissatisfaction with his counsel or dissatisfaction about the delays. It was only when the trial was over, and he had lost, that appellant said anything to the court. At the sentencing, he told the court that he did not know about the trial until the day he got there and that he never had an opportunity to mount an "offense". To date appellant has not indicated what this "offense" might possibly be.

Affirmed.

HATHAWAY, J., and GILBERT VELIZ, Superior Court Judge, concur.

NOTE: Judge BEN C. BIRDSALL having recused himself in this matter, Judge GILBERT VELIZ was called to sit in his stead

and participate in the determination of this decision.